### DELK *v.* THE STATE.

1. If, upon the trial of a person indicted for murder, the evidence introduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice and the other upon warranted inferences which negative its existence, it becomes a question of fact to be decided by the jury, as to which one of these inconsistent theories is correct. In such a case it is proper to charge the jury that the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, or of excuse, or justification, and that it is incumbent on the accused to show such circumstances, unless they appear from the evidence produced against him.

(a) Under the evidence introduced by the State in the present case, a charge to the effect that, where the killing was shown, the burden was upon the party killing to show that he was justified under some rule of law, was too restricted, excluding mitigation or alleviation, or that these might arise from the evidence introduced by the State.

2. It was not desirable, after charging that in all criminal cases the defendant has a right to make such statement as he may see fit to make in his own defense, that the statement is not under oath, and that the jury may give to it such weight and credit as they see fit, and may believe it in preference to the sworn testimony, or may disregard it entirely, the determination of what weight and credit to give to it being for the jury,—to immediately add, in juxtaposition therewith, that jurors have no right to captiously set aside and disregard the testimony of a witness, that it is their duty to believe a witness, unless he is impeached, or his testimony is set aside by some method known to the law, that the jury are to do their duty, whatever it may be, and that it is not a question of sentiment or sympathy, but of finding the truth of the case, under the evidence and the rules of law given them in charge.

3. If a deadly weapon be used in the commission of a homicide in the usual and natural manner in which such weapon would produce that result, such as intentionally shooting another with a gun, the presumption of an intention to kill would arise. But a weapon may be used in a manner not naturally calculated to produce death; and in such a case the question of intent to kill is one of fact. The charge of the court on this subject was inaccurate.

NOVEMBER 15, 1910.

Indictment for murder. Before Judge Parker. Clinch superior court. July 16, 1910.

*B. W. Cornelius, W. T. Dickerson,* and *J. L. Sweat,* for plaintiff in error. *H. A. Hall, attorney-general, J. H. Thomas, solicitor-general,* and *S. Burkhalter,* contra.

LUMPKIN, J. Bill Delk was indicted for the murder of Christopher Vining. He was found guilty, and recommended to life imprisonment. He moved for a new trial, which was refused, and he excepted.

1. The law relating to the presumption of malice arising from a voluntary homicide, where the evidence adduced to establish the homicide does not negative the existence of malice, and of the burden on the prisoner to show circumstances of alleviation or justification, unless they appear from the evidence adduced against him, is thoroughly discussed in the case of *Mann* v. *State,* 124 Ga. 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934). The charge in the present case on that subject was along the line there indicated, except that it omitted any reference to mitigation or alleviation, and also omitted the last qualifying clause stated, namely, unless such circumstances appear from the evidence produced against him. The testimony of the witnesses for the State was such that the charge should not have impliedly excluded the accused from relying on it The court instructed the jury that, where the killing was shown, the burden was upon the party killing "to show that he was justified under some rule of law," thus throwing upon the defendant the burden of showing complete justification.

2. . The court charged the jury as follows: "In all criminal cases the defendant has the right to make to the court and jury such statement as he may see fit to make in his own defense. That statement is not under oath, and the jury may give to it such weight and credit as they may see fit. They may believe it in preference to the sworn testimony in the case, or they may disregard it entirely. It is a matter for you to determine what weight and credit

to give to the defendant's statement. Jurors have no right to cap-
tiously set aside and disregard a witness's testimony. It is their
duty to believe a witness, unless that witness has been impeached,
or his testimony set aside by some method known to the law. You
are to do your duty whatever it is. It is not a question of sentiment
or sympathy; it is a question of finding the truth of this case and
determining it, under the evidence and the rules of law given
you in charge by the court." This placed in unfortunate jux-
taposition the right of the jury to credit the unsworn statement of
the accused, and the duty of the jury to believe a witness unless im-
peached. An examination of the entire charge does not seem to
remove the possible misapprehension which may have arisen in
their minds from telling them, in effect, in the same breath, that
they *might* believe the accused, but they *must* believe the witness
unless impeached. Were the charge accurate in other respects, we
need not determine whether this would necessitate a new trial; but
as a reversal must be had, we call attention to it in order that it
may not occur again.

3. The court also charged as follows: "I charge you further,
that if you find he stuck his gun against the deceased and purposely
punched him with it, and you find that this is an act which natur-
ally tends to destroy human life, and shot that gun in that way,
then I charge you that he would be guilty of murder, whether he
intended to shoot the deceased or not. If you find that that was an
act which naturally tends to destroy human life, then it makes no
difference whether he knew the gun was loaded or not, he would
still be guilty of murder under circumstances of that kind, and you
should so find." Again, in charging on the subject of accident,
he said: "If you are not satisfied of his guilt of either of the
offenses (murder or involuntary manslaughter), if he did not jab
the deceased or punch him, did not intend to push him with the
gun, but that the killing was simply the result of an accident, he
would not be guilty of any offense, and you should acquit him."
The effect of these charges was to instruct the jury that even if
they should find that the accused did not know that the gun was
loaded but believed it to be empty, and did not intend to shoot the
deceased, but simply to punch him with it, and it was accidentally
discharged, this would make no difference in finding him guilty of
murder. This was not an accurate statement of the law. If a deadly

weapon is used in the commission of a homicide, and it appears
that the weapon was used in the manner in which such weapons
are ordinarily used to kill, then the law would presume an inten-
tion to kill. But a deadly weapon may be used in such a manner
as not necessarily to raise such a presumption, but to leave the
intent as a question of fact for the jury. Thus, to strike one with
the barrel of a pistol instead of shooting him with the weapon, or
to strike with the handle of a dirk instead of with the blade, would
not be the ordinary way of using such a weapon to kill, and the in-
tention to kill would be rather a question of fact than of presump-
tion. *Hanvey* v. *State,* 68 *Ga.* 612; *Lewis* v. *State,* 72 *Ga.* 164 (53
Am. R. 835) ; *Scott* v. *State,* 132 *Ga.* 357 (64 S. E. 272).

In *Austin* v. *State,* 110 *Ga.* 748 (36 S. E. 52, 78 Am. St. R. 134),
it was held that if a person recklessly discharges a gun at another,
and death results therefrom, or recklessly discharges a gun into a
crowd, although at no particular person, and death results, such
killing is murder; but that if death results to one from the dis-
charge of a gun in the hands of another, and there is no intention
to kill nor an intention to discharge the gun, the person in whose
hands the gun was held would not be guilty of murder, although
it may have been handled in a reckless and negligent manner. See
also *Roberts* v. *State,* 112 *Ga.* 542 (37 S. E. 879). Of course, if
an involuntary killing happens in the commission of an unlawful
act which in its consequences naturally tends to destroy the life of
a human being, the offense would be deemed murder. Penal Code,
§ 67. But we think that the charge of the court was such as to
lead the jury to make no distinction between punching or jabbing
a man with a gun, if believed to be unloaded, and intentionally
shooting at him. It undertook to instruct them too closely as mat-
ter of law the concrete effect of punching a man with a gun, instead
of leaving the question of intent, and of unintentional homicide in
the commission of an unlawful act naturally tending to destroy
human life, more broadly to the jury.

As the case will be returned for a new trial, we do not deal with
the question of the sufficiency of the evidence, or the mere question
of verbal accuracy in setting out the contentions of the State.

*Judgment reversed. All the Justices concur.*

HOLDEN, J., specially concurring. I concur in the judgment of
reversal, but do not think the charge referred to in the 2d division

of the opinion is subject to the criticism made thereon. The court, in charging the jury regarding the defendant's statement, properly stated that the jury "may give to it such weight and credit as they may see fit," and "may believe it in preference to the sworn testimony." The charge immediately following the statements of the court above referred to, that the jury could not captiously disregard the testimony of a witness, and that they should believe a witness unless impeached or his testimony "set aside by some method known to the law," was not subject to criticism because given in close proximity to the charge in regard to the defendant's statement. It was at least just as appropriate to charge that the testimony of a witness could not be captiously disregarded, immediately after charging on the defendant's statement as indicated in the second sentence hereof, as at any other place in the charge. It was proper to give both propositions of law in charge, and to give them together subjected the charge to no criticism. The charge that the testimony of witnesses was not to be disregarded unless it "was set aside by some method known to the law," in view of that portion of the charge which preceded it, was in effect an instruction to the jury that one method of setting it aside was to believe the statement of the defendant in preference to such testimony. The further charge that it was the duty of the jury to find the truth "under the rules of law given you in charge by the court" could have no other meaning, in view of the immediately preceding charge on the defendant's statement, than that in finding the truth they should consider the rule of law given them, that they could give the statement such weight and credit as they might see fit, and could believe it in preference to the sworn testimony. The charges upon both subjects stated correct principles of law, and the charge relating to the testimony of witnesses was not subject to criticism because given in immediate connection with the charge on the defendant's statement. Indeed, it would seem that where charges containing correct principles of law in regard to the statement of the defendant and the testimony of witnesses are given, instead of it being misleading to the jury to give them in immediate connection with each other, just the reverse would be true: that is, the jury would thereby gain a better understanding of the law in reference to these two subjects.