## 32149. PATTERSON v. THE STATE.

HALL, Justice.

Appellant, Roy Lee Patterson, appeals two consecutive life sentences imposed for the murder convictions of two Crisp County law enforcement officers.

On the evening of May 4, 1975, appellant, his wife Virginia and their baby left Albany in their Ford Pinto to lead appellant's mother, Bessie Patterson, and brother, Joe Patterson, to the I-75 Interchange at Cordele. Joe Patterson was driving a Ford Mustang. As they entered Cordele, the Pinto stopped for gas at a Minit Mart; the Mustang followed. While in the parking lot, Joe Patterson was approached by State Trooper James Young regarding a defective headlight. He was also asked to take an alcoholic breath test. As he was taking the test appellant inquired into the situation. There is conflicting testimony as to what transpired next, but some indication that Trooper Young and appellant got into an argument. Thereafter, Trooper Young took Joe Patterson to the Cordele police station for an intoximeter test. Appellant followed in the Pinto with his wife and child. Bessie Patterson attempted to follow in Joe's Mustang but got

lost.

When appellant and his wife arrived at the police station, his brother and Trooper Young were already inside. Appellant went in, followed by his wife and baby. Dispatcher W. R. Haralson was the only police officer on duty. Appellant and Trooper Young got into another argument; Young attempted to handcuff appellant; a struggle ensued; both Trooper Young and Officer Haralson were killed with Young's service pistol. The eyewitnesses who testified concerning the events surrounding the killings were appellant and his wife. Joe Patterson did not testify and Bessie Patterson was not a witness to the shootings.

After the shootings, appellant, his wife and brother ran out of the police station, got into the Pinto and drove around Cordele looking for Bessie Patterson. The Pinto was seen leaving the station after the shooting. Appellant and his wife were arrested as they were leaving Cordele; Joe and Bessie Patterson were arrested in the Mustang on I-75 later that night. When appellant was arrested, he still had the handcuffs attached to his left wrist.

The state's key witness was Sheriff Benson. He testified that on the night of his arrest, appellant freely told him what had transpired. This statement was later typed up, but never signed by appellant. The state's evidence also showed that all six rounds of Young's pistol were fired. The first shot hit no one, Young was shot with the second and third rounds, and Haralson was shot with the other three rounds. Young's first wound was a mortal head wound; he was subsequently shot in the chest as he lay on the floor. Haralson was shot three times in the stomach. He was unarmed at the time.

Appellant and his wife both testified to the following facts. Upon appellant's inquiry into Joe Patterson's detention, both at the Minit Mart and the police station, Trooper Young cursed at him and told him to keep quiet and not interfere. When appellant and his wife attempted to leave the station, Young grabbed appellant and took a swing at him. Young succeeded in handcuffing appellant's left wrist, but when Young went for his pistol, the appellant was afraid for his wife's life and his own life, so he grabbed the pistol away from Young. Appellant

claimed the pistol went off three times before he obtained possession, and Young allegedly fell after the third shot. He was then charged by Haralson at whom he proceeded to fire until the pistol was empty. Appellant's wife testified that she did not see the shooting; she heard several rapid shots and looked up to see her husband standing and the officers on the floor. Appellant contends that he never signed the statement prepared from his discussion with Sheriff Benson because it inaccurately reflected what was said at that meeting.

Appellant was indicted on July 29, 1975 for the murders of Haralson and Young. He was tried by jury and found guilty as charged. The jury was unable to reach a punishment verdict; the court imposed two consecutive life sentences. Appellant's motion for new trial was denied; he appeals.

1. Appellant contends that the court erred in failing to excuse jurors Kight and Posey for cause, thereby requiring him to utilize two of his peremptory strikes. We find this contention to be without merit.

The conduct of the voir dire is within the discretion of the trial court, and the court's rulings are proper absent some manifest abuse of discretion. *Welch v. State,* 237 Ga. 665 (5) (229 SE2d 390) (1976); *Gatlin v. State,* 236 Ga. 707 (2) (225 SE2d 224) (1976). Whether to strike a juror for cause lies within the discretion of the court. *Welch,* supra, at 671. We have carefully reviewed the record and fail to find any abuse of discretion. These two allegedly biased jurors did not sit on the jury which convicted appellant, nor has he shown that he was prejudiced or harmed because he used peremptory strikes to eliminate the two challenged jurors. See People v. Silvola, — Colo. — (547 P2d 1283 (9)) (1976), cert. den., 429 U. S. 886 (1976).

2. Appellant contends that the trial court erred in denying his motion for mistrial based on the prosecutor's closing remarks regarding an item of evidence which was never admitted.

The granting or refusal to grant a mistrial lies within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Woods v. State,* 233 Ga. 495, 498 (212 SE2d 322) (1975). "In passing on a motion for mistrial because of an improper statement by

the prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury." *Watkins v. State,* 237 Ga. 678, 682-683 (229 SE2d 465) (1976).

The unadmitted evidence referred to by the prosecutor in his closing remark was a piece of bloodstained carpet found beneath Trooper Young's body. The court instructed the jury that they were to erase this reference from their minds and not give any consideration to it. Several state's witnesses testified that the bullet hole in the floor was beneath Trooper Young's body. The introduction of the carpet was therefore not necessary to prove that fact. In light of the evidence and the court's corrective instructions, we find that the trial judge did not abuse his discretion in denying the motion for mistrial.

3. Appellant contends that the denial of his motion for funds to employ experts essential to his defense was error.

Appellant's motion for leave to proceed in forma pauperis was granted by the trial court. Thereafter he sought $3,200 to employ the services of a criminologist, a ballistics expert, and a fingerprint expert. These requests were denied.

The granting or denial of a motion for appointment of expert witnesses lies within the sound discretion of the trial court. Unless there has been an abuse of discretion, the trial court's ruling will be upheld. *Welch v. State,* 237 Ga. 665 (8), supra.

The witnesses to the killings were appellant, his wife and his brother. The only state's eyewitnesses, Young and Haralson, were killed. Since appellant was present during the killings and testified to those events, it was not an abuse of discretion for the trial court to deny the appointment of an independent criminologist to help him reconstruct the crime scene. The state on the other hand had no choice but to use a criminologist to reconstruct the crime scene, since their only two eyewitnesses were dead.

No fingerprints were introduced into evidence. Appellant has made no showing of how he was harmed by the court's failure to appoint him an independent

fingerprint examiner. Therefore, this bare claim of error presents nothing for review. *Coker v. State,* 234 Ga. 555 (3) (216 SE2d 782) (1975).

Two state crime lab experts gave ballistics testimony for the state. There is no evidence that they were incompetent, or that they failed to report the facts as found. They were both given a thorough and sifting cross examination by appellant's counsel. Appellant sought funds to hire an independent ballistics expert to examine the murder weapon and the bullets obtained from the law enforcement officers, to test fire the weapon, to make comparisons, and to advise him and his counsel. The state had no objection to his having his own ballistics expert, but did not find any state statute or case law requiring the public treasury to finance an independent analysis under the circumstances of this case. We agree.

Our recent decision holding that a defendant charged with possession or sale of a contraband substance has the right to have an expert of his own choosing analyze the substance is distinguishable. *Patterson v. State,* 238 Ga. 204, 206 (232 SE2d 233) (1977). The defendant's conviction in *Patterson* rested entirely on the identification of the substance as contraband. We do not have that situation here. *Patterson* does not stand for the proposition that a defendant's request for funds to hire independent experts must always be granted to avoid due process violations. Because the State Crime Lab personnel were not shown to be biased or incompetent, and because appellant's conviction did not rest entirely on the State Crime Lab's analysis, we find that the trial court did not abuse its discretion in refusing to appoint an independent ballistics expert.

4. Appellant raises three arguments challenging the trial court's charges on presumption of malice and presumption of intent to kill from the use of a deadly weapon.

The charge on malice was as follows: "I charge you that the law presumes every intentional homicide to be malicious until the contrary is established." The charge concerning the deadly weapon was as follows: "I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his

acts. If a person uses a deadly weapon in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. This presumption may be rebutted."

(a) Appellant argues first that under *Smithey v. State,* 219 Ga. 247 (132 SE2d 666) (1963) and *Jordon v. State,* 232 Ga. 749, 755 (208 SE2d 840) (1974), the presumption of malice does not apply where the state's evidence itself shows mitigating circumstances, justification or alleviation. He argues that the state's evidence presented by Sheriff Benson and GBI agent Baker showed exculpatory or mitigating elements in the killings, thus rendering the charge on presumption of malice improper under state law. He contends that the malice charge should have contained the concluding phrase, "unless such circumstances appear from the evidence produced against him," citing *Delk v. State,* 135 Ga. 312 (69 SE 541) (1910).

We note initially that *Smithey* and *Jordon* do seem to indicate that if *any* state's evidence (*Jordon,* supra, at 755) shows mitigating circumstances, justification or alleviation, it is erroneous to charge that malice is presumed from the homicide with a deadly weapon. Cf. *Miller v. State,* 184 Ga. 336, 338 (191 SE 115) (1937) ("malice will not be presumed where the proof of the homicide is derived *solely* through an admission of the defendant, which itself presents matters of exculpation.") (Emphasis supplied.) However, examination of those portions of the state's testimony from which appellant seeks support reveals that as a matter of law they fall short of showing cognizable mitigating circumstances.

The totality of the state's case tended to show that appellant repeatedly intruded himself into an arrest of another person, despite the fact that he had been warned numerous times to stay out of it; that he finally provoked one officer into slapping a handcuff on his wrist, whereupon he decided that it "hurt" and that he feared the officer, so he grabbed the officer's gun and killed both policemen, one of whom was totally unarmed.

The specific testimony cited by appellant which comes closest to serving his purpose is the following

testimony of Officer Baker: ". . . but he said he had more words with the Trooper and then the Trooper said, 'Okay, stick out your hand.' He stuck out his hand, the Trooper put the cuff on his left wrist. He said, 'He slammed the cuff on my left wrist and when he did that it hurt me and it made me angry.' And then he said then the struggle started and he says that 'I thought the Trooper was going to go for his gun.' Q. He said what? A. He said, 'I thought the Trooper was going to go for his gun.' He never told me that the . . . that the Trooper pulled the gun. He just said he thought the Trooper was going for his gun, and he said, 'I grabbed the gun. I pulled the trigger and I shot until it wouldn't shoot no more.' " As a matter of law, no circumstances of alleviation, mitigation or justification were shown by this testimony. Cf. *Stovall v. State,* 236 Ga. 840, 843 (225 SE2d 292) (1976) (facts as a matter of law failed to show self-defense); *Gillespie v. State,* 236 Ga. 845, 847 (225 SE2d 296) (1976) (facts as a matter of law failed to show provocation to manslaughter).

Additionally, in the overall context of the charges given, any error in this respect, if it occurred, was harmless. The court instructed the jury that appellant's evidence raised the defense of provocation and self-defense; that once these defenses are raised, the state had the burden to rebut the defenses beyond a reasonable doubt. The court charged on voluntary manslaughter, self-defense and justification, and the jury were clearly instructed that the state had the burden of proving every element of the crime beyond a reasonable doubt. They were also instructed that the state was required to prove beyond a reasonable doubt that appellant had the intent to commit the crime charged.

Jury instructions must always be viewed as a whole. *Nunnally v. State,* 235 Ga. 693 (5) (221 SE2d 547) (1975); *Proctor v. State,* 235 Ga. 720, 726-727 (221 SE2d 556) (1975); *Hilton v. State,* 233 Ga. 11, 12 (209 SE2d 606) (1974). Appellant's argument on this point fails to show reversible error.

(b) As his second attack on these charges, appellant claims that they are unconstitutionally burden-shifting under recent decisions of the United States Supreme Court. The cases alluded to are In re Winship, 397 U. S.

358 (90 SC 1068, 25 LE2d 368) (1970); Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975); Patterson v. New York, — U. S. —, 53 LE2d 281 (1977); and Hankerson v. North Carolina, — U. S. —, (97 SC 2339, 53 LE2d 306) (1977). These cases are concerned with allocation of the burden of proof of issues in a criminal trial.

With respect to the actual elements which constitute the crime charged, Winship and Mullaney held that defendant cannot be called upon to carry any burden of *proof* to rebut them; the state must prove their presence past a reasonable doubt. But the Patterson case allowed to be placed on defendant the burden of *proving* affirmative defenses, or any issue (within limits) which does not constitute an element of the crime itself.

In our case the charges attacked do not present a question of an affirmative defense. Our issues are the presumptions of malice and of intent to kill. Malice incorporates the intent to kill and is an element of homicide as that crime is defined. Code Ann. § 26-1101. Malice itself is defined in that section as a deliberate, intended, unlawful killing. Therefore, under Winship and Mullaney the state must prove malice; defendant does not have to disprove it. Our question is whether charges that malice is presumed from an intentional killing and that intent is presumed from the use of a deadly weapon are consistent with the state's burden.

Examining the explication of Mullaney given in the Patterson case, we find that "Mullaney surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of *proof* to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . Such shifting of the burden of *persuasion* with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." Patterson, 53 LE2d at 295. (Emphasis supplied.)

We find that the charges here objected to are not unconstitutionally burden-shifting, because they do not shift any burden of *proof* or *persuasion* to defendant. They call upon him to go forward with the evidence, when the state has shown the homicide; but in the final analysis the jury were charged that the state was required to prove the

elements of the crime beyond a reasonable doubt. The charge is unlike that disapproved in Mullaney, where defendant was required to rebut malice by *proving by a preponderance of the evidence* that he acted in the heat of passion. Appellant in our case was called upon to *prove* nothing. As we recently wrote in *Davis v. State,* 237 Ga. 279, 280 (227 SE2d 249) (1976), "The burden of producing some evidence of provocation is on the defendant only after the state shows circumstances from which malice may be implied, and the ultimate burden of proving malice beyond a reasonable doubt is on the state. This requirement of producing evidence is expressly not affected by the holding in Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975), n. 28." The Mullaney footnote to which we referred in *Davis* reads, "Many States do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt. . . Nothing in this opinion is intended to affect that requirement." 421 U. S. at 701, n. 28.

Appellant argues that the United States Supreme Court's recent decision in Hankerson v. North Carolina, supra, is directly in point. We cannot agree. In Hankerson, the jury were charged that "the defendant must prove not beyond a reasonable doubt but simply *to your satisfaction* that he acted in self-defense." 53 LE2d 311.(Emphasis by the United States Supreme Court). The North Carolina Supreme Court construed the charge to be burden-shifting, because self-defense negated the unlawfulness of the killings and unlawfulness was an essential ingredient of the crime. Thus, it found that Hankerson was required to disprove an essential element of the crime. The United States Supreme Court found that the matter was a question of state law which it was not called upon to consider: "Since the issue of whether due process requires the prosecution to disprove self-defense beyond a reasonable doubt under North Carolina law was not raised by either party in this case, we decline to consider it now." Id. at 316.

In any event, Hankerson, like the Patterson case, involved a jury charge placing a burden of *proof* on

defendant. We have no such facts in the case before us. Thus, appellant's reliance on Hankerson is misplaced.

The charges attacked were not unconstitutionally burden-shifting.

(c) Appellant's final argument, which he does not support with any authority, is that the charges violate due process because there is no rational connection between the facts proved and the facts presumed. His entire argument is that "It surely cannot be said with substantial assurance that malice accompanies intentional killings, and killings with a deadly weapon more often than not."

Malice is a matter of intent, and the intent of a criminal accused is a matter peculiarly within his own knowledge, as the Supreme Court itself recently observed. Mullaney, supra, 421 U. S. at 702. There is no way to prove it except by inferences from established facts. The presumptions in the charges meet the due process rational connection standards and the contention is without merit.

The charges in issue are not erroneous for any reason alleged, and enumeration number 4 is without merit. Accord, *Spencer v. State,* 236 Ga. 697, 701 (224 SE2d 910) (1976).

5. Appellant contends that the trial court erred in denying his motion for change of venue.

The decision to grant a change of venue lies within the discretion of the trial court, and its discretion will not be disturbed absent an abuse of that discretion. *Allen v. State,* 235 Ga. 709, 713 (221 SE2d 405) (1975); *Jarrell v. State,* 234 Ga. 410, 415 (216 SE2d 258) (1975).

The record before us shows a very extensive voir dire questioning of the prospective and selected jurors. The record establishes beyond doubt that the jurors selected stated that nothing they had seen, heard or read had caused them to form an opinion for or against appellant and that they had no fixed opinion as to his guilt or innocence. The test adopted by this court in determining whether or not a change of venue should be granted is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence from unfavorable pre-trial publicity. *Coleman v. State,* 237 Ga. 84, 91 (226

SE2d 911) (1976); *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973). When the evidence is viewed in light of the established standard, we find that the trial court did not abuse its discretion in overruling the change of venue motion.

6. Appellant contends that the trial court erred in denying his motion to subpoena the entire traverse jury array. We also find this contention to be without mer-it.

Appellant filed a motion to challenge the array of the grand and traverse jurors and a motion to proceed in forma pauperis on July 19, 1975. An indictment was returned on July 29, 1975. Appellant's motion to challenge the jury array was heard on August 25, 1975, prior to a hearing on his in forma pauperis motion that same day. Appellant's motion to challenge the jury array was denied because he failed to prove the racial composition of the 1975 grand or traverse jury which he was challenging. His motion to proceed in forma pauperis was granted.

On September 5, 1975 he filed a renewed motion to challenge the array of the grand and traverse jurors, alleging that he had been financially unable to employ persons to prove, at his first jury challenge hearing, the racial composition of the jury array. The motion further alleged that once he was declared an indigent, the Southern Poverty Law Center had agreed to provide the necessary funds to look into the racial composition of the jury. He therefore moved for a continuance of ninety days to determine and prove the alleged racial discrimination in the traverse jury array. This motion was denied. He then moved for a two-week continuance in order to check physically the race of the traverse jury array; this motion was denied. He then moved for a one-week continuance to allow the jury commissioners to examine the traverse jury array to see if they could determine the racial composition; this motion was denied. He then moved the trial court to allow him to subpoena the 2935 jurors to the courtroom to determine their race visibly; this motion was denied. It is the denial of this motion that is enumerated as error.

A request for continuance rests in the sound

discretion of the trial judge and will not be disturbed on appeal unless it clearly appears that the judge has abused his discretion. *Dorsey v. State,* 236 Ga. 591 (2) (225 SE2d 418) (1976). To challenge the array of the traverse jury successfully, he must prove a prima facie case of unconstitutional discrimination. *Welch v. State,* 237 Ga. 665 (6) (229 SE2d 390) (1976); *Gibson v. State,* 236 Ga. 874 (3) (226 SE2d 63) (1976). Although appellant was able to show an opportunity for discrimination at the motion hearing, he failed to show (by his own admission) a significant disparity between the percentages found in the source and those actually appearing on the jury. See *Barrow v. State,* 239 Ga. 162 (236 SE2d 257) (1977); *Pass v. Caldwell,* 231 Ga. 192 (200 SE2d 720) (1973). While appellant undoubtedly could have conducted more extensive studies with the funds provided by the Southern Poverty Law Center, we are of the opinion that he could have presented some evidence of racial composition of the jury at the motion hearing without those funds. We therefore find that the trial judge did not abuse his discretion in denying the motion for a continuance to subpoena the entire traverse jury array. See *Young v. State,* 237 Ga. 852, 854 (230 SE2d 287) (1976); *Welch v. State,* supra, at 672.

7. In light of the above, we find appellant's contention that he received an unfair trial to be without merit.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs in the judgment only.*

Argued April 12, 1977 — Decided September 6, 1977.

*John L. Carroll, Morris S. Dees, Jr., C. B. King, Millard Farmer,* for appellant.

*D. E. Turk, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.