## 32973. THOMAS v. THE STATE.

HALL, Justice.

Susan Thomas appeals her conviction and life sentence for the murder of Fred Edwards. We affirm.

The state's evidence tended to show that on the night in question Susan Thomas and the victim, with whom she lived, argued in the yard of their home loudly enough to attract attention next door at his mother's house. The argument concerned Thomas' sister Spike. Thomas wanted to invite Spike to spend the night with them, and the victim opposed the plan. Spike was present and witnessed much of the argument, which went on for hours, as the participants drifted indoors and outdoors. Spike acquired and brandished a butcher knife. The victim was never armed in any way. Thomas removed a pistol from the dashboard of an automobile outside the house, and shot up into the air to frighten Fred as he sat on the car, not threatening her in any way. The victim then said he was going to get his clothes together to leave, and Thomas said "You ain't going no God damn place." The argument continued. After about 15 minutes all three went inside the house and things became quiet. Then, according to the testimony of the victim's mother, Spike appeared at her door saying "Miss Dot, Susan done shot Fred." Spike had a butcher knife in her hand and she subsequently threw it away across the street. Then Fred staggered up to the front porch area and collapsed, saying "Mama hurry up. Susan done shot me." The mother went to summon an ambulance and the police. About 15 minutes later Thomas, with the pistol in her hand, came up to where numerous family members were gathered around the victim. Linda said, "Susan, you done shot my brother in the mouth." Susan replied, "Yes. I shot the son-of-a-bitch and I will shoot him again." Linda threw an ashtray at Thomas, who left. The victim's sister Delores also testified to Fred's

dying statement and Susan Thomas' admission in the words quoted above. The victim died shortly thereafter from a .22 caliber pistol wound in the chest, which severed the pulmonary vein.

Thomas testified in her own behalf that the victim had been smoking "reefers." As she tried to put the pistol away under a mattress, she was grabbed by Fred and a scuffle ensued after which he fell to the floor. She did not know he had been shot. She later discovered a gunshot wound in her own right hand, in he interdigital web between the thumb and index finger, and did not know how that happened. She was right handed. In answer to a question from the court she testified that when she took the pistol from the automobile there were six full rounds of ammunition in it. The evidence showed that when police arrived and took the pistol from her, there were five spent cartridges inside it.

1. Thomas' first enumeration of error alleges that the following italicized portion of the court's charge on murder, taken directly from our murder statute (Code Ann. § 26-1101(a)), is unconstitutionally burden-shifting under Mullaney v. Wilbur, 421 U. S. 684 (1975): *"Malice will be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart."*

This court has already ruled in *Davis v. State,* 237 Ga. 279 (227 SE2d 249) (1976), that this charge does not unconstitutionally shift to defendant the burden of proving provocation. Thomas alleges that *Davis* is somehow distinguishable, but she never distinguishes it significantly. In any event, our more recent decision in *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977), not cited by either party here, explores a closely analogous issue at much greater length than did *Davis,* and comes to a similar ultimate conclusion, namely, that it is not unconstitutionally burden-shifting to presume that an intentional homicide is malicious until the contrary appears, nor to presume an intent to kill from the use of a deadly weapon. These charges, like the charge in issue here, lay no burden of *proof* on defendant; they merely require him in certain circumstances to go forward with the evidence, which Mullaney permits. Under *Davis* and

*Patterson,* Thomas' attack on the homicide statute must fall.

Additionally, Thomas attacks the italicized portion of the following charge on circumstantial evidence: "When circumstantial evidence is relied upon to establish a fact the evidence must be such as to reasonably establish the theory relied upon and to preponderate to that theory rather than to any other reasonable hypothesis. The comparative weight of circumstantial evidence and direct evidence on any given issue in which they are in conflict is a question of fact for the determination of the jury; however, in a case in which the proof of the ultimate fact in issue depends on circumstantial evidence alone it is not only necessary that the defendant be proved guilty beyond a reasonable doubt, but it is also necessary that the proven facts must not only be consistent with the hypothesis or conclusions of guilt, but must exclude every other reasonable hypothesis or conclusion except that of the guilt of the accused. A conviction must not rest upon suspicion, conjecture or possibility of guilt. *Where all the facts and circumstances of the case and all reasonable deductions therefrom present two theories of equal probability, one of innocence and the other of guilt, in such a case the jury should acquit.*" (Emphasis supplied.) Thomas argues that the italicized portion in effect instructs the jury that they can convict on circumstantial evidence which merely *preponderates* toward guilt, because they may only acquit where the two theories are exactly equal. This argument is plainly without merit: the italicized portion does not set out the *only* circumstances in which the jury should acquit, as the remainder of the charge makes clear.

2. Thomas next alleges error in the trial court's denial of her motion for new trial based on newly-discovered evidence, namely, a report from the state crime laboratory that a test made in 1976 of tissue from Thomas' wound (taken a year and a half after the fatal shot was fired) showed fairly conclusive evidence that the wound was made by a shot fired by the .22 caliber death weapon. Thomas argues that this evidence is so material in support of her trial theory that the pistol discharged accidentally as she and the victim struggled over it, as

probably to produce a different verdict, which is one requisite for the sufficiency of newly-discovered evidence to warrant a new trial. *Long v. State,* 237 Ga. 110 (227 SE2d 22) (1976); *Burge v. State,* 133 Ga. 431 (66 SE 243) (1909).

There are numerous problems with Thomas' argument that this evidence is newly-discovered and not merely cumulative. One is that the defense could have had defendant's hand analyzed before trial had they proceeded with diligence to do so. Another is that the state offered prior to trial to stipulate that the wound was caused by a gunshot, but defense counsel refused the offer. Another problem is that the state's medical witness testified at trial that her wound was probably caused by a gunshot, so that the evidence she now contends for has already been presented to a great extent. However, the determinative issue is that there were five bullets discharged from this gun after Thomas removed it from the automobile and before it was seized shortly thereafter by police. Only two are accounted for: the one which she fired into the air and the one which killed the victim. That leaves three bullets totally unaccounted for. The state's theory was that in the 15 minutes she was alone after the victim staggered out of the house she devised a self-serving story and inflicted the superficial wound on her right hand to support it. On these facts, additional evidence that *a* .22 caliber bullet made a slight wound in Thomas' hand proves little or nothing. The trial court did not err in finding this proffered evidence insufficient to warrant a new trial.

3. Thomas next alleges that the trial court erred in refusing to dismiss the case for failure to grant her a speedy trial. The relevant delay is agreed to be approximately one year and nine months. She was released on bond four days following her arrest, and remained free through trial. She made no demand for speedy trial during this time. The district attorney's explanation for the delay was that trial preparation required it, and there is no suggestion of improper prosecution motivation in causing the delay. She alleges that because of the delay Dr. Merced's testimony about her hand wound became "vague" and the police

department lost the victim's shirt, both to her prejudice. We find Dr. Merced's testimony not vague but clear, that in his opinion she suffered a gunshot wound in her hand. Testimony concerning the loss of the shirt indicated it disappeared during the police department's move to new quarters, which happened shortly after her arrest. Thus, pre-trial delay seemingly did not bear on this loss.

Applying the four factors to be examined in considering a speedy trial claim, as outlined in *Treadwell v. State,* 233 Ga. 468 (211 SE2d 760) (1975), based upon Barker v. Wingo, 407 U. S. 514 (1972) we cannot find that the trial court abused its discretion in denying the motion to dismiss.

4. The evidence detailed above is sufficient to support the verdict of murder, and the enumeration on the general grounds is without merit.

Our murder statute requires malice; where express malice is absent, it "shall be implied where no considerable provocation appears. . ." Code Ann. § 26-1101.Thomas argues that because the state had no eyewitness to the killing, the state could not affirmatively prove the absence of provocation at the moment of killing; and therefore, under the requirement of Code Ann. § 38-109 that circumstantial evidence must exclude all reasonable hypotheses save the guilt of the accused, the state's case necessarily fell short of proving her guilty of murder.

Thomas cannot at this late date interject an unsupported claim of provocation into a murder case which was defended solely on the theory of accident. Thomas never testified to provocation; she testified to accident. No one testified to a "provoked" shooting. On the trial record, as a matter of law there are no circumstances of provocation in this case. The jury could believe Thomas' testimony of an accidental shooting, or they could believe the other witnesses' testimony of an off-stage shooting climaxing a dispute during which Thomas had once fired her weapon to frighten the unarmed victim, and later admitted the fatal shot and said she would do it again. They believed the state's evidence. The conviction was authorized.

*Judgment affirmed. All the Justices concur.*

SUBMITTED NOVEMBER 11, 1977 — DECIDED JANUARY 3, 1978.

*J. H. Affleck, Jr.,* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Chief Assistant District Attorney, Arthur K. Bolton, Attorney General, James L. Mackay, Assistant Attorney General,* for appellee.