### 38116. COLLINS v. THE STATE.

MARSHALL, Justice.

Timothy Collins, Jr., appeals from his conviction of murder and his life sentence.

1. There was evidence adduced to the following effect. The appellant and the victim, Marion Hill, lived with Ezekial Stone and his wife. When the appellant returned home between 11:00 and 11:30 p.m. on February 6, 1981, the victim was outside, breaking wood into pieces for the fireplace. The appellant stormed into the Stones' bedroom, angrily snatched at Mr. Stone, and threw him to the floor. Stone ordered the appellant to leave and, after picking up a fire poker, the appellant went out the door. Meanwhile, the victim had

gathered some of the firewood together outside and had started walking toward the house. The appellant emerged from the front door and began to antagonize the victim, who stated, "Go on, I don't want bother [sic] with you. I don't want to fight you." The appellant struck out at the victim with the poker. The victim threw down the wood he had collected, and the two men struggled at the side of the front stoop. The victim was not armed, and did not threaten the appellant. The victim held the appellant, but when the latter said, "turn me loose," the victim did so and went in the house.

Witness Simmons observed that the appellant was wounded, but did not believe that the victim had caused the injury, as he had not been holding a weapon. The appellant grabbed a 2″ x 4″ piece of wood containing exposed nails from under the porch edge, and followed the victim into the house. Witnesses heard the appellant strike the victim three times, and heard the appellant say, "I told you I'd kill you . . ." The appellant proceeded to brush his hands off and walk up the street. This occurred at about 12:00 midnight, February 6-7.

City of Milledgeville Police Captain Robert Flury was summoned to the Stones' residence at approximately 12:00 midnight. Witness Stone handed Officer Flury a large section of 2″ x 4″ board with bloodstains on the end, and indicated that it was the murder weapon. Officer Flury entered the bedroom on the right and observed the victim lying between two beds on the floor in a pool of blood. The victim's head was facing away from the doorway, and he was still gasping. He was transported via ambulance to a hospital, where he was pronounced dead at 1:05 a.m., February 7.

An autopsy revealed that the victim's head was severely deformed due to multiple soft-tissue and bone injuries. The base of the skull was badly fractured, and injuries extended to the lower jaw, where a molar had been dislodged. The brain was badly damaged. The cause of death was established as severe injury to the skull and brain as a result of blows to the head.

Officer Eddie Harris of the Milledgeville Police Department observed the appellant bent over in the road about 25 feet from the Stones' house at approximately 11:55 p.m., February 6. Treatment was administered to the appellant at a hospital for a smooth-edged laceration to his left side that did not enter the chest cavity. Officers Waller and Flury later examined the murder scene and located a metal piece on the side of the stoop outside with bloodstains on the edge. The bent end of the metal piece that was sticking up was pointed away from the porch. No bloodstains were observed in the surrounding area. Dr. Grimes testified that the appellant's wound was caused by a smooth-edged object, and that the metal piece might

have been capable of causing his wound if he had fallen on the object with full force.

The appellant testified at trial that the victim had approached and pushed him as he walked down the steps after the altercation with Mr. Stone. The appellant claimed that the victim had stabbed him as they struggled on the ground, and that he was dizzy and in pain when he stood up. He admitted that his hurt and anger caused him to want "a little bit of revenge." He maintained that the victim's hand was raised when the appellant entered the bedroom, and that he believed that the victim held a knife. He further admitted that he had entered the dark bedroom, seen the victim standing between the two beds, and struck the victim with the piece of wood.

The above evidence was sufficient to enable a rational trier of fact to find the defendant-appellant guilty as charged beyond a reasonable doubt; enumerated error 1 is without merit.

2. Enumerated error 2 complains of the exclusion from evidence of a photograph of a wound received by the appellant during the fight with the deceased, which he urges tends to support his contended belief that the victim had stabbed him and was armed with a knife when the appellant approached him in the bedroom.

The record before this court does not include the photograph in question. "Since this court's decisions 'must be made on the record sent to this court by the clerk of the court below and not upon the briefs of counsel,' this enumeration of error presents nothing for review." *Wilson v. State,* 151 Ga. App. 501 (4) (260 SE2d 527) (1979) and cit.

"However, even if we could consider this enumeration, the admission or exclusion of photographs is a matter of discretion for the trial court to exercise and unless manifestly abused will not be controlled by this court." *Belluso v. Sunnyland Foods,* 142 Ga. App. 7 (1) (234 SE2d 821) (1977) and cits.; *City Council of Augusta v. Lee,* 153 Ga. App. 94 (4) (264 SE2d 683) (1980) and cits. The transcript shows no abuse of this discretion. Although such a photograph might generally be admissible (see *Daniels v. State,* 248 Ga. 591 (285 SE2d 516) (1981)), the photograph in question was admittedly "fuzzy" (unfocused), was taken two weeks after the injury, and showed a scar from another preexisting injury. Since no one disputed the fact of the appellant's injury — which was established by the testimony of the appellant, one lay witness, and two medical witnesses — the failure to admit the photograph would not constitute reversible error. *Wilson v. State,* 151 Ga. App. 501, supra, p. 503 (4) and cits.

3. Enumerated error 3 complains of the following charge to the jury: "I further charge you that if you believe beyond a reasonable

doubt that the defendant in this county at any time prior to the finding of this indictment, with the instrument named in the indictment and with malice aforethought, either express or implied, did *unlawfully* kill the victim named in the indictment *and you believe that the instrument used, in the manner used if one was used, was likely to produce death, then you would be authorized and it would be your duty to convict the defendant of the offense of murder.*" (Emphasis supplied.) The appellant contends that this charge was unconstitutionally burden-shifting, under Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), and that if *any* state's evidence shows mitigating circumstances, justification or alleviation, it is erroneous to charge that malice is presumed from the homicide with a deadly weapon. E.g., *Patterson v. State,* 239 Ga. 409, 414 (4a) (238 SE2d 2) (1977) and cits.

The appellant contends that such "mitigating circumstances, justification or alleviation" were shown by evidence of the victim's intoxication and the appellant's injury (which he contended had been caused by the victim's stabbing him). The evidence showed, however, that the appellant continued to provoke the victim, pursuing him even as the victim attempted to disengage from the fight; that the appellant was injured, probably accidentally, on the piece of metal on the stoop; and that the appellant armed himself with a 2″ x 4″ piece of wood with nails in it and chased the unarmed victim into a bedroom, rather than abandon the fight. As a matter of law, no circumstances of alleviation, mitigation or justification were shown by this testimony. Furthermore, it is noted that the judge charged that the jury would be authorized and duty-bound to convict of murder not only from the use of the lethal weapon, but also upon the jury's finding that the appellant "did *unlawfully* kill the victim," which takes into consideration the elements of alleviation, mitigation and justification.

"Additionally, in the overall context of the charges given, any error in this respect, if it occurred, was harmless. The court instructed the jury that the appellant's evidence raised the defense of provocation and self-defense; that once these defenses are raised, the state had the burden to rebut the defenses beyond a reasonable doubt. The court charged on voluntary manslaughter, self-defense and justification, and the jury were clearly instructed that the state had the burden of proving every element of the crime beyond a reasonable doubt. They were also instructed that the state was required to prove beyond a reasonable doubt that the appellant had the intent to commit the crime charged.

"Jury instructions must always be viewed as a whole. [Cits.]" *Patterson v. State,* 239 Ga. 409, supra, p. 415.

4. Enumerated error 4 complains of the following jury charge: "I charge you that you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional act, and if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill." The use of this identical charge has been unanimously approved by this court. *Hosch v. State,* 246 Ga. 417, 420 (fn. 2) (271 SE2d 817) (1980).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 5, 1982.

*Phillip B. Spivey,* for appellant.

*Joseph H. Briley,* District Attorney, *Michael J. Bowers,* Attorney General, *W. Davis Hewitt,* Assistant Attorney General, for appellee.