## 42359. WILLIAMS v. THE STATE.
(335 SE2d 553)

BELL, Justice.

Appellant Dennis Laron Williams was indicted for the February 1983 and May 1984 felony murders of his infant sons, Richard and Jacob Williams. Williams was found guilty of each murder and sentenced to two terms of life imprisonment.[1] He appeals, and we affirm.

Both children died of head injuries. At trial, Dr. Brent Morris, a pediatrician who treated the children, testified that x-rays of Richard showed that he had suffered two rib fractures several weeks before his death. He said that the most likely mechanism of injury was a blow to the baby's side with a blunt object. In addition, Richard had suffered severe brain damage, which in Dr. Morris' opinion was caused by an "acceleration/deceleration injury" that was consistent with violent shaking of the infant.

As to Jacob, Dr. Morris testified that x-rays had revealed two lower leg fractures which had been caused by a torsional force. The fractures were less than a week old. Like Richard, Jacob had suffered severe brain injury resulting from an acceleration/deceleration injury consistent with a violent shaking. It was Dr. Morris' opinion that the injuries to Richard and Jacob had been caused by intentional abuse.

Dr. Walter Boehm, a neurosurgeon who treated Richard, opined that his eye and brain injuries were consistent with abuse and mistreatment by shaking.

Dr. James Metcalfe, a forensic pathologist, performed an autopsy on Richard. He testified that the infant's broken ribs could have been caused by a blow to the chest or by a fall on a protruding object. Richard's brain injury could have been caused, according to Dr. Metcalfe, either by a fall on the head, a blow or blows to the head, or a shaking of the head.

Dr. Fred Gregg, an ophthalmologist, examined Jacob and found blood inside his eyes. He testified that this type of injury was consistent with an adult abusing the child by shaking.

Dr. Floyd James, a pathologist, performed an autopsy upon Jacob's body. He was of the opinion that Jacob's brain injury had resulted from an acceleration/deceleration type injury.

The appellant made several pretrial statements to investigators. Taken in sum, they contained his admissions that Richard had been injured while the appellant was babysitting. Williams said that Rich-

---

[1] Williams was indicted on June 4, 1984. The sentence was entered on August 31, 1984. The motion for new trial was filed on September 28, 1984, was heard on March 14, 1985, and was denied on March 18, 1985. Notice of appeal was filed April 15, 1985, and the transcript was certified by the court reporter on April 23, 1985. The appeal was docketed in this court on May 14, 1985, and argued on June 26, 1985.

ard had been crying, and he had spanked the baby until he stopped breathing.

Appellant made similar admissions regarding Jacob's death. As with Richard, he said Jacob had cried while he was babysitting. Williams had shaken the infant to quiet him, whereupon the baby had stopped breathing and gone limp.

1. When considered in the light most favorable to the verdict, the evidence submitted at trial was sufficient to enable any rational trier of the facts to find Williams guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 433 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Williams contends that the trial court erred in denying his motion for severance of trial of the felony murders. He argues that the offenses were joined only because they were similar, and that he was therefore entitled to severance. We disagree. Where joinder is based upon a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the discretion of the trial judge. *Cooper v. State*, 253 Ga. 736 (3) (325 SE2d 137) (1985); *Williams v. State*, 251 Ga. 749, 804 (16) (312 SE2d 40) (1983).

In this case two brothers of approximately the same age died within a fifteen-month period of similar injuries inflicted by their father under similar circumstances. The similarity of the two murders clearly reached the level of a pattern of fatal child abuse. Accordingly, the trial court did not abuse its discretion in refusing to sever the offenses for trial.

3. Williams contends his pretrial statements to police investigators were not freely and voluntarily made, and that the court therefore erred in admitting them into evidence. We disagree.

Before the court allowed the introduction of the statements, it held a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), and determined, based on the evidence presented by the state (Williams offered no evidence during the *Jackson v. Denno* hearing), that Williams had been advised of his *Miranda* rights, that he had knowingly and intelligently waived them, and that thereafter he had voluntarily made his statements.

There is evidence to support the trial court's ruling. In reviewing *Jackson v. Denno* decisions, factual determinations by the trial court will be accepted unless the findings are shown to be clearly erroneous. *Berry v. State*, 254 Ga. 101 (1) (326 SE2d 748) (1985). We find no error.

4. In his third enumeration of error Williams contends that the court erroneously admitted two photographs into evidence. One of the photographs, state's exhibit 16, depicted a small child in a hospital bed, attached to and surrounded by various pieces of medical equipment. The other photograph, state's exhibit 18, was a close-up of the

same scene.

During the trial the following dialogue took place concerning these photographs:

"Q All right. Let me show you what's been marked as State's Exhibits 16, 17, and 18, and ask you if you can identify that setting particularly in the pictures?[2]

"A These are pictures of a baby in the pediatric intensive care unit at T. C. Thompson Children's Hospital.

"MR. HARRISON: Your Honor, we would move the admission of 16, 17, and 18.

"THE COURT: Any objections?

"MR. BROWN: Yes, Your Honor. He just said they're pictures of a baby. There's been no identity of who the pictures are, or anything, for admission into evidence.

"THE COURT: All right. Lay the foundation.

"Q If you would, look at that picture again and tell me if you're able to determine the child that it is a picture of?

"A I didn't take these pictures, so I can't state specifically that these are pictures of Jacob, although I believe they are pictures of Jacob. But I wasn't there when they were taken, so I can't state categorically that these are pictures of Jacob.

"Q Does that appear to be —

"A This appears to be Jacob and this is the pediatric — I'm sure this is the pediatric intensive care unit and this is bed 3. I know that unit very well, so I have no question about that. I just can't say whether this is Jacob or Richard.

"Q Based on your not taking the picture?

"A Well, based on the fact also that this is either Jacob or Richard, and I don't know what the date of these pictures was.

"MR. HARRISON: Your Honor, I think that would be sufficient foundation.

"THE COURT: Sustain the objection.

"Q All right, let me show you State's Exhibit 16 —

"MR. BROWN: May I see it before you show it to the witness, please?

"MR. HARRISON: Same pictures.

"MR. BROWN: Your Honor, you've already sustained my objection.

"MR. HARRISON: Your Honor, I'll use them for a different purpose if I can lay the foundation.

"THE COURT: Go ahead.

"Q Did you describe that as bed 3 in the pediatric intensive care

[2] State's exhibit 17 was not admitted into evidence.

unit?

"A Yes sir.

"Q All right, now, that is what the setting would be in the hospital in the care of a child such as Richard or Jacob?

"A Yes sir.

"Q Would that depict the monitors and the apparatus used to treat a child that would be in such a hospital?

"A Correct.

"Q All right. Was Jacob and Richard in such a setting?

"A Yes sir. This is either Jacob or Richard, I just don't know which one, because the two babies were so similar in appearance.

"Q All right, State's Exhibit 18. Is that a fair and accurate representation of a ventilating apparatus on a child who had been treated in your care —

"MR. BROWN: Your Honor, this is all totally irrelevant to the case we're here to try. I'm going to renew my objection.

"THE COURT: Overrule your objection. He says it was one of them so I'll admit it.

"Q That's the breathing apparatus?

"A Yes sir.

"Q Now, what is the function of such apparatus?

"A The function of such an apparatus is to provide breathing for someone who either has inadequate lung function or who is unable to breathe on their own.

"Q Now, that would be the situation in both infants, Jacob and Richard, they were unable to breathe by themselves?

"A Yes sir."

Appellant contends that these photographs were inadmissible because the state did not show that the authenticating witness, Dr. Brent Morris, was present when the photographs were taken. However, we find no error. It was "not necessary that the authenticating witness be the photographer or even have been present at the scene when the photograph was taken. *Toler v. State*, 213 Ga. 12 [3] (96 SE2d 593) (1957)." *Craft v. State*, 154 Ga. App. 682, 684 (2) (269 SE2d 490) (1980).

Moreover, these grounds were not raised in the trial court. Appellant's failure to make a timely and specific objection constituted a waiver. *Seabrooks v. State*, 251 Ga. 564 (1) (308 SE2d 160) (1983); *Muff v. State*, 254 Ga. 45 (2a) (326 SE2d 454) (1985).

Appellant also complains that the state did not establish the exact identity of the child in the photographs. As we explain below, we find that under the circumstances of this case it was not necessary to

specify whether the child in the photographs was Richard or Jacob.[3]

It is the trial court's function to decide in the exercise of its discretion whether or not a photograph is a fair and accurate representation of the scene sought to be depicted, *City Council of Augusta v. Lee*, 153 Ga. App. 94 (4) (264 SE2d 683) (1980), and unless manifestly abused the exercise of that discretion will not be controlled by this court, *Collins v. State*, 248 Ga. 687 (2) (286 SE2d 8) (1982). In this case the two photographs were offered to depict the setting in which the children had been hospitalized. The testimony of Dr. Morris was adequate to establish that the photographs truly and accurately represented the room and its equipment per se. His testimony also established that the appearance of the baby in the shots did not differ discernibly from either of the brothers as they lay in the intensive care unit. Therefore, it was of no moment that Dr. Morris could not say whether the child was Richard or Jacob, and the trial court did not abuse its discretion by admitting state's exhibits 16 and 18.[4]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 29, 1985.

*Rickie L. Brown,* for appellant.
*Stephen A. Williams, District Attorney, Stephen Harrison, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.

---

[3] Although Williams has not carried forward on appeal his objection that the photographs were irrelevant, we note in passing that they were relevant to aid the jury in visualizing testimony regarding the nature of the medical treatment which was administered to the children in the pediatric intensive care unit and the sequence of events leading up to their deaths.

[4] Although we affirm the admission of these exhibits, we are compelled to emphasize that we would have been presented with a very different question if the baby in the photographs had been wholly unidentified. In that event the photographs could have been inflammatory and misleading. Cf. *City Council of Augusta v. Lee*, 153 Ga. App. 94, supra, holding it was not an abuse of discretion to exclude a posed motion picture from evidence where the movie was substantially different from the facts of that case.