## 55631. HUBBARD v. THE STATE.

DEEN, Presiding Judge.

The defendant, the witness Shari Parlee, and two others were indicted for burglary. On motion of the state the defendant was tried separately and was convicted.

1. (a) The first four enumerations of error complain that a police officer who was directed to the defendant by the usual "reliable informer" was not required to answer whether or not the informer was the witness Shari; that she was not properly instructed as to her right to remain silent; that the court, after hearing out of the jury's presence ruled that it was not up to him to decide whether or not there was a common law marriage between the parties, and that portions of her testimony were inadmissible because privileged.

We deal first with Parlee's testimony that she and

the defendant lived together for a period of time, told some friends and their landlord that they were married, and that the defendant took out insurance policies naming "Shari Parlee Hubbard" as his wife and beneficiary. On the other hand, she testified that they intended to marry, took out an application for a marriage license, but did not perform the marriage ceremony, and that they lied in taking out the insurance policy. "Q. Did you represent yourself as being Mrs. Mack Jefferson Hubbard? A. Yes, I did. Q. Well, was that true? A. No. . . Q. What was the purpose? A. To get insurance. . . Q. Am I correct in assuming that you and Mack held yourself out as man and wife? A. Yes. Q. Did you agree to do so? A. Yes, until we got married." The agreement on which a common law marriage is founded (Code § 53-101 (2)) must contain a mutual intent to be married in praesenti, not a present intent to marry in the future. *Brown v. Brown,* 234 Ga. 300 (215 SE2d 671) (1975).

Between the occurrence of these events and the trial of the case Shari Parlee married another man. Her position throughout the trial was that this marriage was valid, and that there was no marriage to Hubbard which would have invalidated it. Hubbard did not testify. The application for marriage license to Hubbard, not followed by issuance of a license, is some corroboration of the witness' testimony, whereas the admissions regarding statements in the insurance policies contradict whatever circumstantial evidentiary value the latter might have. Under this testimony no finding could be demanded that the parties were married, from which it follows that the refusal of the court to decide the question could not be harmful to the appellant.

(b) Code § 38-418 (1) provides that among those communications excluded from evidence on consideration of public policy are communications between husband and wife. By Ga. L. 1957, p. 53, Code § 38-1604 was altered to provide that a spouse shall be competent (although not compellable) to testify against the other spouse. It is obvious that the latter section has modified the former. "Even if the witness were the lawful spouse of the defendant, he had no right to object to her testifying since she is now a competent witness, but is not compelled to

testify. It is only where the witness is not competent under the statute that objections to the witness testifying may be made by a party." *Gates v. State,* 120 Ga. App. 518 (1-b) (171 SE2d 375) (1969). As to the contention that the court should have instructed the witness on that point, he observed that Shari (a co-indictee) had appeared with counsel who might instruct her or, presumably, request instructions if he desired, as this related to a privilege of the witness and not the defendant. This also disposes of Enumeration 5 (d).

(c) It was not error to fail to require a police officer to answer yes or no to the question of whether Shari was the "reliable informant" who had telephoned him. This case differs from *Fair v. State,* 140 Ga. App. 281 (231 SE2d 1) (1976), in that there it was the suspected girl friend of the defendant who was asked whether she had telephoned a police officer, which was held a question that would not disclose the informer. Here the question directly asked of the officer as to whether she *was* the informer would have conveyed this information.

2. It is improper for the court, in instructing the jury, to inform them that certain language is given at the request of the party, although it does not ordinarily demand the grant of a new trial. *Dupree v. State,* 231 Ga. 348 (2) (99 SE2d 81) (1957). Since it is also improper to put emphasis on the fact that a defendant failed to testify, the court is obviously required to steer a narrow course where the defendant in fact requests a charge to the effect that his failure to testify is not to create any presumption against him. The instruction given here and complained of in Enumeration 5 (a) attempts to avoid both these defects and is not error for any reason assigned.

3. Since four persons were indicted for the burglary in question, and there was some conflict as to what parts, if any, were played by the various defendants involved, it was not error to instruct in the language of Code § 26-802 the circumstances under which one who did not directly commit the crime may be nevertheless guilty. *Freeman v. State,* 130 Ga. App. 718 (3) (204 SE2d 445) (1974).

4. It is contended, under the authority of *Martin v. State,* 93 Ga. App. 580 (2) (92 SE2d 233) (1956), that since there are two marriage applications signed by Shari

Parlee in evidence, and since they differ in certain particulars, it was error to fail to charge without request the provisions of Code § 38-1806 on impeachment by wilfully and knowingly swearing falsely. As *Martin* points out, the rule applies when the witness has sworn falsely by contradicting prior testimony *in the same case*. The contradictory documents do not meet this criterion, but rather constitute contradictory statements, under the first rather than the final clause of Code § 38-1806.

5. The language complained of in Enumeration 5 (e) ("that there is no other hypothesis upon which he could be charged") appears to be a lapsus linguae. In view of the instruction as a whole we do not regard it as such prejudicial error as to require reversal of the case.

6. We have examined the fourth ground of the amended motion for a new trial, which attempts to show that the state did in fact offer Shari Parlee a "benefit" in exchange for her testimony, but find at most only certain contradictory circumstances which the trial court was not compelled to accept as against the clear testimony of the parties, whether on the trial of the case or at a hearing held thereafter. This leaves only the fifth ground of the amended motion, which contends that the trial court considered a copy of a Florida "rap sheet" which had not been made known to the defendant prior to his trial. This does not appear to have been denied by the state. Accordingly, the sentencing feature of this procedure is vacated and the case remanded to the trial court for determination of the propriety of considering, if he did, this matter in aggravation.

*Judgment affirmed in part and reversed in part. Smith and Banke, JJ., concur.*

Submitted April 3, 1978 — Decided April 20, 1978.

*Morris S. Robertson,* for appellant.

*B. B. Hayes, District Attorney, James Stanley Smith, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General,* for appellee.