## 36070. WHITAKER v. THE STATE.

MARSHALL, Justice.
The appellant was indicted in Tattnall County for the murders of a correctional officer and two fellow inmates, and for aggravated assaults upon two officers, arising out of a racially motivated riot and attempted prison break at the state prison in Reidsville. By the parties' consent, the venue was changed to Evans County. This appeal is from the convictions of three counts of murder, with three consecutive life sentences, and one count of simple battery and one count of simple assault, with two 12-month sentences to be served concurrently with the life sentences.

1. Enumerated errors 1, 2, 3, 4, 5, 16, 17, 18, 19, 20, 37, 38, 39, 40, 41, 42 and 43 are deemed waived by failure to be supported by argument or citation of authority under Rule 45 of this court. 242 Ga. 1009, Code Ann. § 24-4545.

2. In enumerated errors 6 through 14, the appellant challenges the quantum of the evidence which the trial court ordered turned over to him after an in camera inspection, pursuant to Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) and its progeny. Pursuant to the court's order, the state provided the appellant with: his own statements; the criminal records of the state's witnesses; 51 exculpatory statements; the names, pictures, nicknames, and location of all inmates housed in B-1 and B-2 dormitories (two of those involved in the alleged crimes) at the state prison; the appellant's medical files, classification and admission summary, and psychological report; and a floor plan of the west side of the prison.

"The Constitution does not require police to provide a defendant with all police investigatory work, and the mere possibility that an undisclosed item of information might have helped the defendant or might have affected the outcome of a trial, is

not sufficient under Brady v. Maryland . . ." *Taylor v. State,* 243 Ga. 222, 223 (253 SE2d 191) (1979). The material made available to the appellant met or exceeded the requirements of Brady, supra. The appellant has not shown the existence of any material required to be disclosed under Brady that was not so disclosed.

3. Enumerated error 15 is the denial of the appellant's motion for funds to hire investigators, and to obtain psychological and psychiatric expert witnesses.

"The granting or denial of a motion for appointment of expert witnesses lies within the sound discretion of the trial court. Unless there has been an abuse of discretion, the trial court's ruling will be upheld." *Patterson v. State,* 239 Ga. 409, 412 (238 SE2d 2) (1977). At trial, the appellant was represented by four retained counsel, who had a salaried investigator work on the case. The ACLU of Georgia provided $6,402.29. The National Jury Project provided $4,394 plus 260 hours of volunteer time. The Anti-Death Penalty Project had its legal worker and paid interns working for the appellant on this case. A large number of witnesses, many of whom were experts, testified in the appellant's behalf. Teams of volunteers conducted telephone surveys in two counties. The above, plus the material made available pursuant to the Brady motion, constituted an adequate investigation, discovery and representation.

4. Enumerated errors 21 through 36 contend that the appellant's voir dire of the jury was unduly restricted in various specified particulars. The only aspect of the alleged limitation which is argued, however, is that pertaining to determination of possible racial prejudice.

The record does not support the contention of either the restriction of voir dire concerning, or the existence of, racial prejudice. The state objected only to one question to one juror regarding race, which required the juror to prejudge the evidence. There were no objections to any of the appellant's other questions concerning race. A trial court is not required to permit questions regarding race in a particular form, or to permit a specific number of questions simply because of the desire of the accused. Ham v. South Carolina, 409 U. S. 524, 527 (93 SC 848, 35 LE2d 46) (1973).[1] Under the above circumstances, we cannot say that there was any abuse of discretion in the conduct of the voir dire.

5. In enumerated errors 44, 45 and 48, it is contended that the

---

[1]We note that 15 of the 42 qualified jurors in this case were black; four of the eight alternate jurors were black; six of the 12 petit jurors selected were black; one of the two alternates selected was black; the foreman of the jury was black; and nine of the state's 16 witnesses were black.

trial court unduly restricted cross-examination of GBI Agent Butler concerning statements taken by the agent from inmates and others who were present at the prison on the day in question, and erroneously excluded those statements from evidence. The appellant argues that the effect of this and similar rulings was to prevent him from showing that he had been singled out for prosecution, not because of substantial evidence inculpating him, but rather because he emerged during the latter phase of the attempted prison outbreak as a vocal and visible spokesman for other inmates.

Although defense counsel stated in oral argument that the state had objected to these statements on the grounds of relevancy, the record is clear that the ground of the objection was hearsay. Nevertheless, the judge permitted Agent Butler to testify that inmates World, Walls, Diaz, Gay, Evans and Cobb had given statements which did not implicate the appellant. Thus, in spite of the fact that the appellant cites no exception to the hearsay rule whereunder these statements were admissible, the appellant was given the benefit of their admission at the expense of the state's right of confrontation and cross-examination. We find no error harmful to the appellant.

Notwithstanding the appellant's argument that the prosecution was motivated by considerations unrelated to the question of his guilt or innocence of the crimes charged, the evidence, including the testimony of eyewitnesses, supports the verdict.

6. In enumerated error 46, the appellant complains of the admission in evidence of 23 photographs taken at the autopsies of the three murder victims.

"This court has held many times that photographs of the victim of a crime are admissible, where they are relevant on the issues in the case, although they may be inflammatory and prejudicial to the accused." *Edwards v. State,* 233 Ga. 625, 627 (212 SE2d 802) (1975). See also *Florence v. State,* 243 Ga. 738, 741 (256 SE2d 467) (1979); *Mooney v. State,* 243 Ga. 373, 394 (6) (254 SE2d 337) (1979) and cits. In the present case, with three murder victims with 167 different wounds, the 23 photographs were not an excessive number to establish the cause of death.

7. It is contended in enumerated error 47 that defense counsel was erroneously denied the opportunity to demonstrate to the jury the actual value of certain promises made to inmate witnesses by the prosecution in exchange for their testimony.

It is undisputed that the only promise made was that such inmate-witnesses would be transferred from Georgia State Prison if they so desired. The state complied with the requirements of Giglio

v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972), by informing the jury of the state's promise before each witness testified. The appellant contends that he should have been allowed to go into great detail as to the alleged despicable conditions at the prison so as to illustrate the value of the promises. However, three of these witnesses testified that the prisons to which they had been transferred had more privacy, less violence, and were safer than Georgia State Prison. We do not find that the trial court abused its discretion by refusing to allow the appellant to present additional witnesses to testify to the conditions at the prison. This enumeration is without merit.

8. Enumerated errors 49, 50 and 51 pertain to the contention that the appellant was prevented from presenting his theory of the case to the jury, i. e., that he was singled out for prosecution because of his visibility as a spokesman. We have dealt with this issue in Division 5, hereinabove.

9. In a statement to GBI Agent Butler, the appellant said that he had seen two white inmates stabbed. This statement was admitted in evidence without objection. However, during cross-examination by the prosecutor, the appellant repudiated that statement and testified that he had seen only one "white boy that got stuck." In enumerated error 52, the appellant complains of the court's refusal to admit in evidence the written portion of his earlier statement, as to the contents of which the prosecutor had cross-examined him.

We do not agree that the trial judge refused to allow evidence of this statement to be admitted. The appellant's statement was read into evidence, and the jury was instructed that it could ask the court to replay the statement if necessary. The refusal to allow the written statement to be admitted could not have been harmful to the defense. Cf., *Proctor v. State,* 235 Ga. 720, 723 (221 SE2d 556) (1975) and cits. This enumeration is without merit.

10. Enumerated errors 53, 54, 55, 56 and 57, pertaining to the denial of a motion to dismiss or grant a directed verdict of acquittal on each of the five counts of the indictment, were waived by failure to argue. However, we note that this ruling could not be error inasmuch as there was some evidence authorizing the verdict.

11. Enumerated errors 58 and 59 are the denial of the appellant's motion for mistrial after allegedly inflammatory and prejudicial closing argument by the state, as follows:

"Two children are without a daddy, a lady is without a husband . . . [The victims] had rights and you should have compassion for them and their families. We talk too much about the defendant many times and forget about the victims of a crime. I ask you to have the

same compassion for their families and for their rights . . ." At this point, the appellant interrupted the argument, exclaiming that he didn't commit the crimes, to which the prosecutor replied in the jury's hearing, "I'm sure, Your Honor, that he planned to do that to affect the jury . . . I don't want to be interrupted any more times by a crying defendant." It was at this point that the motion for mistrial was made. Finally, after arguing that "[i]t's undisputed that he is guilty of these crimes," the prosecutor urged the jury: "Now don't let your community down and don't let these officers in this room with these blue officers' shirts on that look to you for protection, don't let them down. You do what you've got to do."

At the time the appellant moved for a mistrial, the trial court instructed the jury to disregard the last remark and that sympathy was to play no part in their verdict. Pretermitting any ruling we might have reached if this issue had been preserved for our review, we hold that the failure to renew the objections and the motion for mistrial after the corrective instructions, makes the denial of the motion for mistrial not subject to review. *Burgess v. State,* 149 Ga. App. 630 (1) (255 SE2d 100) (1979) and cits. Similarly, the unobjected to argument occurring after the motion for mistrial is not reviewable, as it does not demand a mistrial as a matter of law. Appeals to convict for the safety of the community have been upheld. See *Minor v. State,* 143 Ga. App. 457 (2) (238 SE2d 582) (1977) and cits.

12. In enumerated errors 60, 61 and 63 (b), the appellant alleges that, since his indictment did not allege that he was a party to the crime and he had no notice that he would be tried as a party to the crime, it was erroneous to charge that he could be convicted under such theory pursuant to Code Ann. §§ 26-801, 26-802 (Ga. L. 1968, pp. 1249, 1271). Since six persons were indicted for the crimes in question (of which fact the appellant had notice), and since the evidence showed that the appellant aided and abetted in the commission of the crimes, but it was impossible to determine which defendants inflicted the fatal stab wounds among the multiple wounds, the charge on party to crime was not erroneous. See *Hubbard v. State,* 145 Ga. App. 714 (3) (244 SE2d 639) (1978); *Davis v. State,* 134 Ga. App. 750 (4) (216 SE2d 348) (1975).

13. In enumerated error 62, it is argued that it was error to deny a continuance of several hours for the hearing on the motion for new trial in order to allow time for an out-of-state counsel to arrive in court to assist in argument.

The Supreme Court has held that an out-of-state lawyer has no property interest cognizable under the Fourteenth Amendment which requires automatic recognition of a right to appear pro hac

vice in a criminal prosecution. Leis v. Flynt, 439 U. S. 438 (99 SC 698, 58 LE2d 717) (1979). In the case sub judice, the date for the September 13, 1979, hearing was set on August 3, 1979. Present at the hearing was appellant's counsel, attorney Jerry Boykin, who had been in the case since September of 1978. The trial judge decided to proceed with the hearing on schedule to accommodate a state's witness, who would have been inconvenienced by a delay of several hours. Under these circumstances, the denial of the continuance was not an abuse of discretion.

14. In enumerated error 63 (c), it is contended that a new trial should have been granted on the ground that the jury had not been properly sequestered. In support of the motion for new trial were the affidavits of Billy Ware and John Lewis, who claimed that, on one night during the pendency of the trial, they saw some of the jurors in the case in a shopping center, and that they did not recognize a bailiff with the jurors.

It is undisputed that Ware had worked for some of the other indicted inmates. Although the trial did not end until two days after the alleged incident, neither affiant brought to the attention of the court or the prosecutors this alleged violation of sequestration. Two of the three prosecutors had talked with Ware after the alleged incident, yet he did not mention it. At the hearing, Bailiff Callaway testified that on the evening in question she had escorted some jurors to "window shop," but that they had been escorted the entire time and that no one else had approached them. The trial judge had ample opportunity to observe her demeanor, and he specifically found her to be credible.

"A murder trial at which the state does not seek the death penalty is not a capital case within the meaning of Code Ann. § 59-718.1 . . . and it is not error to allow the jury to disperse during such a murder case. [Cit.]" *Cook v. State,* 242 Ga. 657, 658 (subdiv. 4) (251 SE2d 230) (1978). Since the jury did not impose the death penalty upon the appellant, and since there was evidence which authorized a finding that there was no improper conduct during this supervised dispersal, the violation of the sequestration rule — if indeed it was one — was merely technical, and not reversible error.

The evidence when construed in the light favorable to the verdict is sufficient to enable any rational juror to find that each element of the offenses was proven beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The convictions were not erroneous for any reason urged.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 13, 1980 — DECIDED JULY 16, 1980.

*Jerry Boykin, John W. Karr, Walter James Gordon,* for appellant.

*Dupont Cheney, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.