Carzell MOORE, Plaintiff-Appellant,
v.

Walter D. ZANT, Warden, Georgia
Diagnostic and Classification
Center, Defendant-Appellee.

No. 82–8683.

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1983.

Opinion on Granting of Rehearing
En Banc March 15, 1984.

Robert E. Morin, Stephen B. Bright, Atlanta, Ga., for plaintiff-appellant.

Susan Boleyn, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Carzell Moore was charged in a two count indictment with the rape and murder of Teresa Allen. A jury found him guilty on both counts and sentenced him to death on both counts. After exhausting his state remedies, Moore filed the present habeas corpus action in federal district court. The district court denied relief without holding an evidentiary hearing. On appeal, Moore raises several issues, none of which contain merit. We therefore affirm.

## I. FACTS AND PROCEDURAL HISTORY

The evidence adduced at trial showed that on December 12, 1976, eighteen-year-old Teresa Allen arrived at work at the Majik Market convenience store in Cochran, Georgia. Shortly before 7:00 p.m. the store was found to be empty; the cash register and safe were open and empty; and $466 was missing from the store. Ms. Allen was missing, and her automobile was gone. Two days later, Teresa Allen's body was discovered in Monroe County, Georgia. She had been raped and shot through the stomach and the head. Footprints, two 30.06 cartridge hulls, a 30.06 metal jacket of a bullet, tire tracks, and a nylon stocking were found near the body.

Three witnesses testified that on the day of the robbery, they dropped off Moore and Roosevelt Green at Moore's house. Moore's house was approximately four blocks from the Majik Market. On the morning following the robbery, Green arrived at the home of a friend driving an automobile similar to Ms. Allen's car. In his possession were a lot of change, a roll of "bills," "bank bags," (all of which were consistent with the items taken from the Majik Market), and a 30.06 rifle. Approximately one month later, Green was arrested in connection with a separate robbery. He was driving Teresa Allen's automobile.

In early January 1977, Thomas Pasby accompanied Moore to examine an automobile that Moore intended to purchase. During their discussion, Moore told Pasby that he had killed someone and that he and Green had robbed the Majik Market in Cochran and forcibly abducted Teresa Allen. Moore related that after leaving the store, Green and he had each raped Ms. Allen. Moore had then told Ms. Allen to exit the car and told Green to drive to a gas station to purchase gasoline. Moore related to Pasby that despite Ms. Allen's protestation and begging for mercy, he had killed her by shooting her once in the stomach and in an attempt to make identification difficult, again in the face. Ms. Allen's body was found in the condition described by Moore to Pasby. Pasby also testified that when Moore was informed of Green's arrest, he stated "Damn, I told Green to get rid of the car and that rifle."

The jury convicted Moore of both rape and murder and sentenced him to death on both counts. In recommending the death penalty, the jury found two statutory aggravating circumstances; (1) that each offense had been committed while the offender was engaged in the commission of additional capital felonies, O.C.G.A. § 17–10–30(b)(2) (1982) (formerly Ga.Code Ann. § 27–2534.1(b)(2)); and (2) that each offense was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant. O.C.G.A.

§ 17–10–30(b)(7) (1982) (formerly Ga.Code Ann. § 27–2534.1(b)(7)).

On direct appeal, the Georgia Supreme Court affirmed the convictions and sentence, *Moore v. State,* 240 Ga. 807, 243 S.E.2d 1 (1978), and the United States Supreme Court denied certiorari, 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 249 (1978). Moore then filed a habeas corpus petition in state court. After conducting an evidentiary hearing, the state court denied relief. The United States Supreme Court denied certiorari. *Moore v. Zant,* 446 U.S. 947, 100 S.Ct. 2176, 64 L.Ed.2d 803 (1980). Moore then filed a second habeas petition in state court in an effort to exhaust those issues which he had failed to raise in any of the prior proceedings. The state court dismissed the petition without further consideration. Moore then filed the present habeas corpus action in federal district court. The district court adopted the magistrate's report and recommendation without holding an evidentiary hearing and denied relief. This appeal followed.

## II. SENTENCING PROCEEDING

Moore argues that his sentencing proceeding resulted in unguided and unchecked jury discretion in violation of the eighth and fourteenth amendments. *See Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 2741–44, 77 L.Ed.2d 235 (1983); *Eddings v. Oklahoma,* 455 U.S. 104, 110–15, 102 S.Ct. 869, 874–76, 71 L.Ed.2d 1 (1982); *Godfrey v. Georgia,* 446 U.S. 420, 427–28, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (Stewart, J., joined by Blackmun, Powell, and Stevens, JJ.); *Gregg v. Georgia,* 428 U.S. 153, 188–89, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (Stewart, J., joined by Powell and Stevens, JJ.). Moore bases this assertion on three contentions: first, he contends that the state improperly introduced evidence of nonstatutory aggravating circumstances; second, Moore argues that the trial judge incorrectly instructed the jury; and third, Moore asserts that the prosecution's closing argument improperly focused the jury's attention on arbitrary factors.

### A. Evidence of Nonstatutory Aggravating Factors

■ Moore argues that the introduction of certain evidence at the sentencing hearing unconstitutionally allowed the sentencing jury to consider nonstatutory aggravating circumstances in imposing the death sentence. This evidence included evidence of previous convictions for two unrelated burglaries and grand larceny and for possession of marijuana. Transcript at 799. In response to testimony by Moore and his mother regarding his upbringing and a plea for mercy, the prosecution called Mr. Joseph Allen, the victim's father. Allen testified regarding certain positive aspects of the victim's life—that she had been an honor high school graduate, had received a college scholarship, had been working her way through school, and had wanted to be a nurse. Transcript at 799–808.

As a matter of federal constitutional law, the trial judge acted properly in allowing introduction of the prior convictions. In examining the Georgia capital punishment system in *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court held that once the sentencing authority has found at least one valid statutory aggravating circumstance making the defendant eligible for the death penalty it may consider

> other possible aggravating factors in the process of selecting, from among [the eligible] class, those defendants who will actually be sentenced to death. What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.

*Id.* at 2743–44 (emphasis in original) (footnote omitted). The Court also held that the prosecution may present any evidence in extenuation, mitigation, or aggravation of punishment, provided that such evidence is not "constitutionally impermissible" or "totally irrelevant to the sentencing process." *Id.* at 2747; *see Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 3396–98, 77 L.Ed.2d 1090 (1983); O.C.G.A. § 17–10–2(a) (1982) (formerly Ga.Code Ann. § 27–2503).

The sentencing jury in this case found the presence of two statutory aggravating factors making Moore eligible for the death sentence. These factors were (1) that each offense had been committed while Moore was engaged in the commission of another capital felony, O.C.G.A. § 17–10–30(b)(2) (1982), and (2) that each offense was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind, O.C.G.A. § 17–10–30(b)(7) (1982). The trial judge could therefore properly admit any "additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior conviction," O.C.G.A. § 17–10–2(a) (1982), provided that the evidence bore on "defendant's prior record, or the circumstances of his offense," *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 2965 n. 12, 57 L.Ed.2d 973 (1978) (plurality opinion). We find no constitutional error in the trial judge's admission of Moore's prior convictions for burglary, grand larceny, and possession of marijuana.

Petitioner's argument regarding the admissibility of Joseph Allen's testimony presents a more difficult question. Mr. Allen testified that Teresa had been an honor graduate from high school, had received a scholarship to college, had been working her way through school, and had wanted to be a nurse. Moore asserts that Mr. Allen's testimony was introduced to show the effect of the crime on the victim.[1]

In determining whether admissibility of Mr. Allen's testimony affected petitioner's due process rights, we are mindful of the Supreme Court's admonition in *Barefoot v. Estelle*, 103 S.Ct. at 3391, that

[t]he role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary

and limited. Federal courts are not forums in which to relitigate state trials. Mr. Allen's testimony was clearly relevant to mitigation. On direct appeal, the Georgia Supreme Court held that the evidence related to rebuttal of the defense's contention during the guilt-determination phase that the victim had been an accomplice in the robbery. *Moore v. State*, 240 Ga. at 819, 243 S.E.2d at 10. Were this contention accepted by the jury, it could be viewed as a mitigating circumstance. The Georgia Supreme Court held that Mr. Allen's testimony rebutted this potential mitigating circumstance and was therefore relevant.

■ As a federal court reviewing the denial of a writ, we must examine state proceedings for errors of constitutional magnitude. *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Cobb v. Wainwright*, 609 F.2d 754 (5th Cir.1980). Mr. Allen's testimony was not an effort to introduce evidence regarding the psychological effect of the crime on Teresa Allen. In a trial for murder, the state must necessarily show the effect of the crime on the victim—the victim's death—in order to make out a case.

■ The state offered Joseph Allen's testimony to "show aggravating circumstances." When the trial judge perceived the nature of the testimony being offered, he immediately limited it by saying he would admit it only as it would "relate itself to the statutory aggravating circumstances that [the prosecution had] served on the defendant prior to arraignment." Transcript at 801. The Georgia statute, O.C.G.A. § 17–10–2 (1982), permits any party at the sentencing hearing to introduce additional evidence "in extenuation, mitigation, and aggravation of punishment."

---

1. In *Muckle v. State*, 233 Ga. 337, 211 S.E.2d 361 (1974), a former instructor of a rape victim testified that the victim ceased to be a good student after the crime and the victim's husband testified that after the crime, the victim had changed from "an outgoing, lively type of person to one who is withdrawn, scared, and more nervous." *Id.* at 337, 211 S.E.2d at 362. In interpreting the same Georgia statute that applies to this case regarding admissibility of

evidence, the Georgia Supreme Court held that admission of this evidence was improper and prejudicial and vacated the defendant's sentence. *Id.* at 339, 211 S.E.2d at 363. "There is nothing in the statute which indicates that the state may introduce testimony regarding psychological effect of the crime on the victim between the date of the crime and the time of the trial." *Id.*

Upon review of the entire record, the Supreme Court of Georgia found that the purpose for which the trial judge admitted the testimony was valid. During the guilt determination phase of the trial, the defense had elicited testimony from Joyce Brown, a co-worker of the victim, that upon returning to the Majik Market to relieve Teresa Allen, she had found the safe unlocked and undamaged. The Georgia court held that the defense could have used this testimony to insinuate that the victim might have been an accomplice in the robbery. Although his evidence was slim, defense counsel could have asked the jury to draw the inferences that the deceased had not been an innocent victim but rather had collaborated with petitioner in robbing the Majik Market and had willingly accompanied him, leaving the store unattended. While the basis for such an inference was slim, defense counsel could properly urge it.[2]

Carzell Moore was accused of committing both crimes in a manner which involved several statutory aggravating circumstances. The trial judge authorized the jury in imposing the sentence as to the murder count to consider whether the offense "was committed while the offender was engaged in the commission of additional capital felonies, to-wit: The rape, kidnapping and armed robbery of Teresa Carol Allen." Transcript at 821; *see* O.C.G.A. § 17–10–30(b)(2) (1982). In sentencing Moore on the rape count, the jury was authorized to consider whether the offense "was committed while the offender, that is, the defendant, was engaged in the commission of additional capital felonies, to-wit: kidnapping and armed robbery and murder of Teresa Carol Allen." Transcript at 823; *see* O.C.G.A. § 17–10–30(b)(2) (1982). Where defense counsel could have raised the issue as to whether Teresa Allen had actually been robbed and kidnapped, two offenses with which Moore was not charged, the state could offer material evidence to contradict this assertion. Mr. Allen's testimony regarding Teresa's background and character related to the presence of these statutory aggravating circumstances and was properly admitted.[3]

Moore's argument that admission of Mr. Allen's testimony allowed the jury to impose a death sentence based on arbitrary factors implies that admission of this testimony turned the sentencing proceeding into an arbitrary contest between the characters of the victim and the defendant. In addressing the constitutional implications of the death penalty in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1971), the Supreme Court made clear that any capital punishment system, either facially or as applied in a particular case, which encourages or permits the application of the death penalty on a discriminatory or arbitrary basis is unconstitutional. *See Zant v. Stephens,* 103 S.Ct. at 2747–48; *Godfrey v. Georgia,* 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (Stewart, J., joined by Blackmun, Powell,

---

**2.** We note, however, that defense counsel did not make such an argument to the jury. Counsel stated:

> This was a brutal crime, there's no question about it. The District Attorney described how Miss Allen was shot, what her condition was and there's no question that this was a terrible thing. This crime is something that's exceedingly serious and I know all of us have a lot of sympathy for everybody that's involved in this case, the family, I know we all feel that, and the question is not whether or not we have sympathy for the victim, it's whether or not this Jury that's going to set aside their sympathy, set aside their inclination to want to do something about this, and decide whether or not there's enough proof to convict Carzell Moore.

Transcript at 716. Of course, at that time, no verdict of guilt had been returned, and the question of mitigation was not ripe for argument.

**3.** As a matter of Georgia law, this evidence, introduced in the limited manner as it was, was properly admissible even if it had not related to one of the statutory aggravating circumstances charged against Moore. "The identity and general background of the victim are relevant issues in a trial of one accused of his murder...." *Stevens v. State,* 247 Ga. 698, 703, 278 S.E.2d 398, 404 (1981), *cert. denied sub nom. Stephens v. Georgia,* — U.S. —, 103 S.Ct. 3551, 77 L.Ed.2d 1398 (1983).

and Stevens, JJ.); *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (Stevens, J., joined by Stewart and Powell, JJ.). *Gregg v. Georgia,* 428 U.S. 153, 188–89, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (Stewart, J., joined by Powell and Stevens, JJ.).

The concern for avoiding arbitrariness naturally implies that imposing a death sentence on the basis of the peculiar characteristics of persons involved—such as race, religion, class, or wealth—is forbidden. *See Zant v. Stephens,* 103 S.Ct. at 2747. That is not to say that where such characteristics are material to resolving a genuine issue in the case, testimony regarding these characteristics must be excluded. When accused of murdering a person to steal $20 from the victim, a defendant may show that the defendant was wealthy with a pocketful of dollar bills not likely to commit such a crime. The prosecution, however, cannot make the existence of such an identifiable characteristic of either the defendant or the victim an issue per se and justification for a death sentence. *Id.*

A careful examination of the record reveals that the trial judge prevented Mr. Allen's testimony from encouraging a death sentence based on a comparison of the characters of Teresa Allen and Carzell Moore. Any exploration into the character of the victim was fraught with constitutional danger. The transcript discloses that the trial judge was sensitive to the problem. He did not permit an extensive development of the temperament or attractiveness of the victim; rather, he limited Mr. Allen's testimony to a statement of her education and work habits relating to the statutory aggravating circumstances charged in the case. Transcript at 804–06. Thus, it appears that the prosecution properly presented evidence of characteristics of the victim to the jury. In the brief evidence taken, the prosecution did not undertake to demonstrate the racial, ethnic, or other forbidden characteristic of any party. We cannot say that the trial judge's balancing of the relevancy of Mr. Allen's testimony against its prejudice was constitutionally faulty. We are not prepared to hold that it violates the constitution

for the jury to know who it was that was the victim of murder.

## B. Instructions Regarding Role of Mitigating Circumstances

■ Moore asserts that the trial judge did not properly instruct the jury on the role of mitigating circumstances in capital sentencing. This court has repeatedly emphasized that a trial judge "must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death." *Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir. Unit B 1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *see Goodwin v. Balkcom,* 684 F.2d 794, 801–02 (11th Cir. 1982). Moore contends that the trial judge's instructions in this case failed to articulate the role of mitigating circumstances by not informing the jury that it could sentence petitioner to life imprisonment even if it found aggravating circumstances. Moore also asserts that the instructions precluded the jury from considering mitigating circumstances other than petitioner's age by specifically noting only that mitigating factor. *See Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion); *Washington v. Watkins,* 655 F.2d 1346, 1369–77 (5th Cir.) *modified,* 662 F.2d 1116 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

We have carefully reviewed the trial judge's sentencing instructions and conclude that they are free from constitutional error. The trial judge first instructed the jury that it "would be authorized to consider imposing a sentence of death" only if it found that a statutory aggravating circumstance existed beyond a reasonable doubt. Transcript at 821. The trial judge then instructed that if the jury did not find the existence of statutory aggravating circumstances, "the sentence *would be* imprisonment for life." *Id.* (emphasis added). This instruction clearly expressed the need for a finding of statutory aggravating circumstances to establish eligibility for a capital sentence. *See Zant v. Stephens,* 250

Ga. 97, 297 S.E.2d 1 (1982) (answering certified question), *incorporated into* ——— U.S. ———, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The trial court then charged that in determining the appropriate sentence, the jury was "authorized to consider all of the evidence received" in both the trial and the sentencing hearing. Transcript at 823. This language clearly instructed the jury that it could impose a life sentence even if it found the presence of statutory aggravating circumstances; these factors merely *authorized* the death penalty in determining "what sentence is appropriate in each count." *Id.*

The court defined mitigating circumstances as "those which do not constitute a justification or excuse for the offense in question but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame." *Id.* at 823–24. A close reading of the sentencing instructions indicates that the court then used the defendant's age only as an example of mitigating circumstances. In examining the overall charge, *Corn v. Zant,* 708 F.2d 549, 558–59 (11th Cir.1983), we conclude that the trial judge properly instructed the jury on the role of mitigating circumstances.

## C. Instructions Concerning Aggravating Circumstances

■ Petitioner asserts that the jury instructions concerning the (b)(7) aggravating circumstance were constitutionally defective. Georgia law, O.C.G.A. § 17–10–30(b)(7) (1982), includes as an aggravating circumstance murders and rapes that are "outrageously or wantonly vile, horrible or inhuman in that [they] involve torture, depravity of mind, or an aggravated battery to the victim." Petitioner argues that the trial judge did not appropriately limit this instruction and that the Georgia Supreme Court failed to apply any limited construction of this circumstance. *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

We reject both of these contentions. Moore's first assertion constitutes an argument that because the statutory language of (b)(7) fails to restrain the arbitrary and capricious imposition of the death penalty, the trial judge must give a limiting instruction. This court has previously addressed this contention and held that no limiting instruction is required. *Westbrook v. Zant,* 704 F.2d 1487, 1504 (11th Cir.1983).

■ Appellant's second contention that the Georgia Supreme Court did not apply a sufficiently limited interpretation to the (b)(7) circumstance in conducting its mandatory review similarly lacks merit. Georgia law, O.C.G.A. § 17–10–35(c)(2) (1982), requires the Georgia Supreme Court to assess the evidence independently and determine whether the record supports the jury's findings of aggravating circumstances before affirming a death sentence. In examining the (b)(7) circumstance in *Godfrey,* the United States Supreme Court stated that "the validity of the ... death sentence[ ] turns on whether, in light of the facts and circumstances of the murders that he was convicted of committing, the Georgia Supreme Court can be said to have applied a constitutional construction of the phrase 'outrageously or wantonly vile, horrible or inhuman in that [they] involved .... depravity of mind ...'" *Godfrey v. Georgia,* 446 U.S. at 432, 100 S.Ct. at 1766 (Stewart, J., joined by Blackmun, Powell, and Stevens, JJ.) (footnote and citation omitted); *see Westbrook v. Zant,* 704 F.2d at 1504–05. We must, therefore, examine the facts and circumstances of the case at bar to determine whether evidence supports the Georgia Supreme Court's conclusion that this case involved the (b)(7) circumstance in accordance with that court's prior interpretation of this circumstance. *See Godfrey v. Georgia,* 446 U.S. at 430–32, 100 S.Ct. at 1765–66 (Stewart, J., joined by Blackmun, Powell, and Stevens, JJ.); *Westbrook v. Zant,* 704 F.2d at 1504–05.[4] The

---

**4.** Evidence clearly supported the other statutory aggravating factor common to both counts—that the capital offense charged had been committed while the offender was engaged in the commission of another capital felony. *See* O.C.G.A. § 17–10–30(b)(2) (1982).

evidence in the present case clearly supports the Georgia Supreme Court's conclusion that torture or aggravated battery preceded Teresa Allen's death. We, therefore, conclude that the (b)(7) factor was not applied in an impermissibly vague or overbroad manner in this case.

### D. Prosecutor's Closing Argument

█ Petitioner asserts that the prosecutor's closing argument injected arbitrary factors into the jury's sentencing deliberations by referring to Moore's ability to seek appellate review and attempting to inflame the jury against all persons who commit homicide. In order to prevail on this claim, petitioner must show that the prosecutor's actions were so egregious as to render the trial fundamentally unfair. *Hance v. Zant,* 696 F.2d 940, 950 (11th Cir.1983). We must evaluate the effect of the prosecutor's remarks by considering the totality of the circumstances, *id.* recognizing that with a person's life at stake, a prosecutor should not play on the passions of the jury. *Id.* at 951.

█ The record contains no support for petitioner's assertion that the prosecutor sought to inflame the jury against all persons who commit homicide. Similarly, references to the Georgia Supreme Court's mandatory review did not render the trial fundamentally unfair. *See California v. Ramos,* —— U.S. ——, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) (California law requiring trial judge to inform jury that a sentence of life without possibility of parole may be commuted by the governor does not invalidate a death sentence). The trial court, moreover, instructed the jury to disregard the prosecutor's reference to the automatic review. Transcript at 812–13. Based on a careful reading of the prosecutor's entire closing argument, we cannot conclude that the prosecutor's closing remarks at the sentencing proceeding rendered the trial fundamentally unfair.

### III. TRIAL COURT'S REFUSAL TO PROVIDE PETITIONER WITH FUNDS TO RETAIN HIS OWN EXPERT WITNESS

█ Much of the evidence in this case consisted of physical evidence and scientific analysis. This evidence included hair comparisons, blood and saliva tests, and examinations of footprints and tire tracks. Petitioner asserts that the trial court's refusal to provide him with funds to retain his own expert to analyze this evidence violated the constitution.

We reject petition's contentions. Under Georgia law, the appointment of an expert in a case such as this one ordinarily lies within the discretion of the trial court. *See Whittaker v. State,* 246 Ga. 163, 269 S.E.2d 436 (1980); *Patterson v. State,* 239 Ga. 409, 238 S.E.2d 2 (1977). We cannot hold that, in exercising discretion in this case, the trial judge rendered petitioner's trial fundamentally unfair.

█ A comparison of the facts of this case with those of *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir.1983) and *Barnard v. Henderson,* 514 F.2d 744 (5th Cir.1975), leads us to no contrary opinion. In *Barnard,* the defendant did not seek the provision of an expert witness. He had been denied access to the remains of the bullet which had killed the victim. He wanted to have it examined. The court held that he was entitled to access to the physical evidence for that purpose. 514 F.2d at 746–47. In *Westbrook,* the defendant had not been examined, at all, by a psychiatrist or other behavioral expert. In order to proffer evidence in mitigation and in defense of the charge that he was guilty of commission of aggravating circumstances, he contended that such an examination was necessary. The trial court had interpreted Georgia law as permitting psychiatric examination only if the defendant pled insanity at time of the offense or at trial and had denied defend-

---

Under the Supreme Court's holding in *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), this statutory aggravating circumstance supports the Georgia Supreme

Court's affirmance of the death sentence regardless of the possible invalidity of the (b)(7) factor:

ant's request for an examination by the state's experts, presumably at the state's mental hospital. In dicta, we stated that a defendant might be entitled to such an examination if necessary for a fair presentation of evidence on aggravating/mitigating circumstances, but found the denial did not, in that case, deprive the defendant of a fair trial. 704 F.2d at 1497.

Here, the record discloses that, contrary to the situation in *Westbrook,* expert examination was accomplished and the expert witnesses were available. The petitioner had ample opportunity to examine the experts on cross-examination, and nothing in the record indicates that the experts were less than forthright in admitting the limitations of their opinions. For example, Warren C. Tillman, the microanalyst who tested and compared the various samples of hair at issue in the case was asked on cross examination whether hair from one part of the average person's head resembled hair from other parts of the average person's head to a degree sufficient to allow reliable identification. He admitted that "[f]ifty-one per cent of the time—I'm right every time in the sense that they are identical microscopically. As to whether or not they actually come from the individual is impossible to determine in forensic science." Trial Transcript at 399. The record does not indicate nor does petitioner allege that the experts in this case were biased or incompetent. Absent such an allegation, we cannot conclude that the trial judge abused his discretion in denying petitioner's request for funds for another expert.

## IV. DISTRICT COURT'S REFUSAL TO HOLD AN EVIDENTIARY HEARING

Petitioner asserts that the district court erred by relying on the state habeas court's findings of fact and refusing to hold an evidentiary hearing on issues raised in Moore's habeas corpus petition. 28 U.S.C. § 2254(d) provides that a state court's find-

ings are due a presumption of correctness unless

> ... the applicant shall establish or it shall otherwise appear, or the respondent shall admit— ...
>
> (2) that the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing;
>
> (3) that the material facts were not adequately developed at the State court hearing; ... [or]
>
> (7) that the applicant was otherwise denied due process of law in the state court proceeding;

See *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Moore asserts that at the hearing on his first petition for a writ in state court, he attempted to produce evidence that a key prosecution witness, Thomas Pasby, was on probation at the time he testified in Moore's trial and that law enforcement officials promised him that his probation would not be revoked in exchange for testimony against Moore. If such an agreement had existed and was suppressed from the jury, Moore would have been deprived of a fair trial. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The state habeas court refused to permit defense counsel to examine Pasby's probation officer or his files; rather, the state judge reviewed the files *in camera.* Petitioner asserts that his lack of an opportunity to review the files denied him a full and fair hearing.

Although a deal between Pasby and the state would certainly be material, petitioner has failed to satisfy his burden of showing that the state court's investigation of Pasby's parole record did not afford him a "full and fair hearing" or that the material facts were not adequately developed at the state court hearing. *See Coleman v. Zant,* 708 F.2d 541, 545 (11th Cir.1983); *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983).[5] Based on his *in camera* review

---

**5.** Petitioner's habeas counsel objected to the state court's refusal to allow him to examine Pasby's parole record. Consequently, petitioner has satisfied his burden of showing that any

failure to develop facts either "material," 28 U.S.C. § 2254(d)(3), or "crucial to a fair, rounded development of the material facts," *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9

of Pasby's parole file and the record submitted, the state habeas court concluded that no "deal" existed. State habeas court's order at 5. Before examining the probation records, the state habeas judge heard testimony from Alan Merchant, a probation officer, who explained the procedures used by the state in revoking probation. The probation record itself lacks any evidence that there was any agreement between Pasby and the prosecution that would require investigation by the state habeas court. We therefore hold that petitioner has failed to show that the state court proceeding did not accord him a full and fair hearing or that the proceeding did not adequately develop the material facts.

■■■ Petitioner also asserts that the district court erred in not holding an evidentiary hearing before denying relief on his claims of ineffective assistance of counsel, the state's alleged use of false testimony, and the state's use of an improper custodial interrogation. Petitioner alleges that his eight previous attorneys rendered ineffective assistance by committing a litany of errors. *See* Habeas Corpus Petition at 7–15. In order to establish ineffective assistance of counsel, petitioner must show that counsel's ineffectiveness resulted in "actual and substantial disadvantage to the course of his defense." *Washington v. Strickland,* 693 F.2d 1243, 1262 (5th Cir. Unit B 1982) (*en banc*), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) (No. 82–1554). Viewing the record in the context of the totality of the circumstances, we conclude that petitioner has presented no evidence that counsel did not render reasonably effective assistance. *See Lovett v. State of Florida,* 627 F.2d 706, 708 (5th Cir.1980), *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974).

■■■ Petitioner asserts that the district court erred in not conducting an evidentiary hearing into his contentions that the state used perjured testimony and used the fruits of an improper custodial interrogation. Perjury by a state's witness does not constitute grounds for granting the

writ unless petitioner establishes that the state knowingly used the perjured testimony. *Skipper v. Wainwright,* 598 F.2d 425 (5th Cir.1979). Petitioner has produced no evidence that either the testimony was perjured or that the state knowingly used perjured testimony. Moore asserts that an unconstitutional search and seizure resulted from his improper custodial interrogation. Having litigated this fourth amendment claim fully and fairly in state court, Moore may not receive federal habeas corpus relief on the alleged unconstitutional search and seizure. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976); *O'Berry v. Wainwright,* 546 F.2d 1204 (5th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977). The district court, therefore, did not err in refusing to conduct an evidentiary hearing into petitioner's claims.

## V. CONCLUSION

We have carefully reviewed the record and addressed each of the issues raised by petitioner on this appeal. We conclude that none of his contentions contain merit and affirm the judgment of the district court denying habeas corpus relief.

AFFIRMED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except with respect to Part II.A and Part II.D. Specifically, I do not agree with the majority's rejection of Moore's claim that the testimony of the victim's father, coupled with the prosecutor's closing argument, rendered the death sentence unconstitutional, and his claim that prosecutorial misconduct rendered the penalty trial fundamentally unfair.

### EVIDENCE OF NONSTATUTORY AGGRAVATING FACTORS

*Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), establishes

L.Ed.2d 770 (1963), was not attributable to petitioner's inexcusable neglect or deliberate by-

pass. *Thomas v. Zant,* 697 F.2d at 986.

the proposition that having found at least one statutory aggravating circumstance making the defendant eligible for the death penalty, the sentencer is not barred by the Constitution from considering other possible aggravating circumstances in the process of deciding whether that defendant will actually receive the death penalty. *See id.* at 2743. Hence, the admission of evidence of a nonstatutory aggravating circumstance ordinarily will not give rise to an error of constitutional magnitude. *Stephens* and the Court's earlier opinions, however, make it clear that not *all* evidence pertaining to mitigation or aggravation may be admitted without constitutional error. In *Stephens,* the Court recognized that an aggravating factor, and evidence thereof, may be rejected as "constitutionally impermissible or totally irrelevant to the sentencing process." *Id.* at 2747. And in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the plurality noted that restrictions on the evidence that can be offered at a sentencing hearing are unnecessary only "[s]o long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant." *Id.* at 203–04, 96 S.Ct. at 2939.

Having reviewed the evidence introduced and the arguments made at Moore's sentencing hearing, I conclude that the testimony of the victim's father presented the jury with a constitutionally unacceptable criterion for imposing the death penalty, *i.e.,* the victim's value to society and to her family. In so concluding, I place particular emphasis on the references to the victim's qualities and the comparisons between the victim and the defendant in the prosecutor's final argument. In short, the testimony of the victim's father, with the prosecutor's comments, served not merely to let the jury know who the victim was, but rather to urge the jury to return a sentence of death *because of* who the victim was. To the extent that sentencer consideration of the victim's positive attributes promotes arbitrariness without enhancing individualiza-

tion in the imposition of the death penalty, I would vacate Moore's death sentence and remand for resentencing.

This is not to say that I would object to the revelation of the victim's attributes, within limits, at the guilt/innocence phase of a capital trial, or even at the sentencing phase where there is some independent source of relevance. In this case, however, I can discern no independent source of relevance for such evidence. First, I cannot accept the rationale put forth by the Georgia Supreme Court in *Moore v. State,* 240 Ga. 807, 243 S.E.2d 1, *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 249 (1978), and adopted in the majority opinion. It is true that the victim's good character would be relevant in a case in which the defendant asserts the victim's complicity as a defense to the robbery charge at the guilt/innocence phase or as a mitigating circumstance at the sentencing phase. But because this is not such a case, the admirable characteristics of the victim are not "material to resolving a genuine issue in the case," and thus "testimony regarding these characteristics must be excluded." That the trial judge was "sensitive to the problem" and did not permit a more egregious display does not alter the fact that the testimony allowed was constitutionally impermissible.

The testimony of the victim's father and the prosecutor's remarks thereon confirm that the evidence was offered for the constitutionally unacceptable purpose of demonstrating, as aggravating circumstances, the victim's worth as a member of society and of her family, the relative social value of the victim and the defendant, and/or the sympathy due the victim and her family.[1] As the prosecutor stated when calling the witness, "we call Mr. Joseph Allen, who is the father of the victim, as a witness *to show aggravating circumstances.*" Over defense counsel's repeated objections, Mr. Allen testified that his daughter, Teresa, would have been 19 had she lived, that she

---

1. The evidence at issue may not be fairly characterized as properly rebutting the mitigating evidence offered by the defendant in his bid for jury sympathy. For the victim's qualities have

nothing to do with whether the circumstances of the defendant's life militate in favor of leniency. Rather, they provide an independent, albeit invalid, basis for the harsher sentence.

was an honor high school graduate, that she was awarded a scholarship to college, that she was employed while in school in order to help pay for her education, and that she aspired to be a nurse.

In his closing argument at the sentencing phase, the prosecutor made a number of comments underscoring the victim's favorable traits and calling for a comparison between the victim and the defendant. Of particular importance is the following:

> Now, when you talk about useless killings, and I think this killing was absolutely useless, there is absolutely no mitigation, no mitigating circumstances whatsoever.... There was absolutely no reason in the world for this young girl to have been killed, and I think if you're going to discuss sympathy for Carzell Moore, then you ought to certainly think about what Mr. Allen said about the girl having been an honor graduate in high school, helping her parents by working, trying to earn a living and get a decent education, better herself, help her folks and here her life is ended at age eighteen, by someone who displays no more emotion and no more feeling, than to come in here to Court and just absolutely deny one hundred percent something that you, Lady and Gentlemen, know that he did and know full well that he did.

Earlier the prosecutor had told the jury:

> Now, on the other hand, you've got the Allens. The family is here, all of them. You've seen them in Court, the Courtroom has been full of them. They've come up here in the interest of their loved one just like Mrs. Moore comes in the interest of her loved one. So, the reason for putting up Mr. Allen, I wanted you to find out something about Teresa just as Carzell related something about himself.

These remarks leave no doubt that the testimony of the victim's father was intended to provide additional evidence in aggravation to counter Moore's mitigating evidence. The testimony, together with the closing argument, constituted a not-so-subtle invitation to the jury to sentence Moore to death on the basis of his victim's social worth.

Turning to the abstract, and more fundamental, issue whether use of the victim's virtues as an aggravating circumstance in a death sentencing proceeding violates the Constitution, I start with the majority's observations that "[a]ny exploration into the character of the victim [is] fraught with constitutional danger," and that "[t]he concern for avoiding arbitrariness naturally implies that imposing a death sentence on the basis of the peculiar characteristics of persons involved—such as race, religion, class, or wealth—is forbidden." I submit that the social value of the victim is precisely the sort of "peculiar characteristic" which, if emphasized, poses an intolerable risk of arbitrariness in the sentencing determination.

Although this appears to be an issue of first impression, my conclusion logically follows from the Supreme Court's accommodation of the sometimes conflicting constitutional interests in avoiding arbitrariness and promoting individualization in capital sentencing. In response to the assertion that sentencer consideration of nonstatutory aggravating factors leads to arbitrariness, the Court in *Stephens* noted that while statutory guidelines serve to channel sentencer discretion, consideration of other factors helps ensure "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." 103 S.Ct. at 2744 (emphasis in original). Put differently, the enhanced individualization resulting from consideration of nonstatutory factors is viewed as offsetting the constitutional dangers posed by the greater discretion and concomitant risk of arbitrariness. Accordingly, in order for evidence of a given nonstatutory aggravating factor—such as the victim's social value—to be constitutionally admissible, it must further, or at least have the potential to further, an individualized determination "on the basis of the character of the individual and the circumstances of the crime."[2] Be-

**2.** This analysis would not invalidate the aggravating circumstance of killing a policeman since that circumstance focuses less on the qualities of the individual victim and more on the nature of the offense, *i.e.,* interference with law enforcement. Indeed, the statutes of the

cause evidence of the victim's social worth directly relates to neither category,[3] its admission at the sentencing phase of a capital trial is unconstitutional.[4]

## PROSECUTOR'S CLOSING ARGUMENT

In concluding that the prosecutor's final remarks at the sentencing proceeding did not render the trial fundamentally unfair, the majority ignores two improper lines of argument which pervade the prosecutor's summation. First, the majority makes no mention of the prosecutor's portrayal of the victim as a valuable member of society and of her family. The impropriety of this conduct is evident from the preceding discussion. Second, the majority erroneously concludes that "[t]he record contains no support for petitioner's assertion that the prosecutor sought to inflame the jury against all persons who commit homicide." In fact, the transcript reveals that despite the trial judge's admonition to restrict his comments to the particular case, the prosecutor repeatedly referred to the general deterrence function of capital punishment, tacitly urging the jury to help reduce the incidence of violent crime by imposing the death penalty in this case. Insofar as such comments introduce a factor wholly unrelated to "the character of the individual and the circumstances of the crime," *Stephens,* 103 S.Ct. at 2744, they are improper.

In short, several of the prosecutor's closing comments were plainly improper and highly prejudicial. In my judgment, "the prosecutor's actions were so egregious as to render the trial fundamentally unfair." *Hance v. Zant,* 696 F.2d 940, 951 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).

In light of the constitutional invalidity of the victim's value aggravating circumstance and its use in this case, and given the

impropriety of the prosecutor's closing argument, I would vacate the death sentence and remand for resentencing.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

### BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.

---

states in this circuit either omit any reference to police officers or specify that the victim must have been "engaged in the performance of his official duties." Ga.Code § 17–10–30(b)(8) (1982).

**3.** It would, of course, be pure sophistry to argue that the positive attributes of the victim are subsumed under the expression "circumstances of the crime."

**4.** My resolve in this regard is confirmed by the spectre of a statute listing as an aggravating circumstance "that the victim of the murder was a valuable member of society and of her family" or anything to like effect. Similarly, even though the standards are more permissive in connection with mitigating evidence, it is difficult to imagine a defendant's being allowed to argue the victim's worthlessness in mitigation.